UNITED STATES of America, Plaintiff–Appellee,

v.

**Salvador PADILLA, Defendant–Appellant.**

No. 93–1344.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1994.

Decided May 9, 1994.

Andrew B. Baker, Jr., Asst. U.S. Atty., Office of the U.S. Atty., Dyer, IN (argued), for plaintiff-appellee.

Carmen Fernandez, Szarmach & Fernandez, Hammond, IN (argued), for defendant-appellant.

Before CUMMINGS, CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Salvador Padilla was one of fourteen defendants named in a multi-count indictment targeting a cocaine distribution operation. Charged with participation in the drug conspiracy, see 21 U.S.C. § 846, Padilla quickly agreed to plead guilty and cooperate with the government's prosecution of his codefendants in exchange for certain favorable treatment. Specifically, the government promised not to prosecute Padilla for any further offense that he might disclose in the course of his cooperation and agreed to recommend to the district court that it impose the minimum sentence available within the relevant sentencing guideline range determined to be applicable at the time of sentencing. The government also assured Padilla that it would seek to defer sentencing until he could complete his end of the bargain and then it would notify the sentencing court of the extent and quality of his cooperation.

The plea agreement, however, did a poor job of spelling out the likely consequences of Padilla's plea of guilty. It stated that he was subject to a maximum penalty of forty years imprisonment and a $2,000,000 fine and that if he was actually sentenced to one year or more of prison time he would face a subsequent period of supervised release lasting at least three years (and up to life). This characterization of his potential exposure was both misleading and incomplete. First of all, it was clear that the conspiracy and the scope of Padilla's participation in it probably involved enough cocaine mixture (at least five kilograms) to activate a potential maximum penalty of life imprisonment coupled with a $4,000,000 fine. See 21 U.S.C. § 841(b)(1)(A). (Eight kilograms of cocaine were eventually attributed to Padilla by the court at sentencing). Secondly, the plea agreement contained no mention of the mandatory minimum sentences Padilla would likely face—ten years under § 841(b)(1)(A) for five or more kilograms of cocaine or five

years under § 841(b)(1)(B) for one-half kilogram or more.

Normally, such deficiencies are remedied at the plea hearing where the district court engages the defendant in a required colloquy designed in part to ascertain his awareness of the consequences of his plea. See Fed. R.Crim.P. 11(c).[1] In this case, however, the able and experienced district judge unfortunately repeated the errors of the plea agreement. While taking pains to ensure that Padilla understood the nature of the charge against him and the rights he would forego by pleading guilty, the district court did not advise Padilla accurately of the maximum penalties actually facing him and neglected to inform him at all about the mandatory minimums likely applicable to his case. The latter shortcoming is the focus of Padilla's appellate brief and the request to vacate his guilty plea contained within it.

This violation of Rule 11(c)(1)—that it is a violation is clear—is subject to harmless error review and should be disregarded if it "does not affect substantial rights." Fed. R.Crim.P. 11(h). In the context of a defendant's acceptance of a plea of guilty, the harmlessness inquiry naturally should focus on "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir.1993) (*en banc*). If the oversight in the colloquy may be reasonably viewed, from a review of the limited record typically preserved in such cases, as having influenced the defendant's decision to plead guilty, then it impaired his ability to evaluate with eyes open the direct attendant risks of accepting criminal responsibility—certainly a substantial right within the ambit of Rule 11 generally, and *the* substantial right protected by Rule 11(c). See *id.;* Fed.R.Crim.P. 11, 1974 advisory committee note.

---

1. Rule 11, in part, reads:
   (c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

   (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law....

Failure to inform a defendant about applicable mandatory minimums can be, but is not necessarily, a serious oversight. The inquiry is fact bound. If, for instance, the record discloses that a defendant was aware when pleading guilty that the sentencing guidelines would subject him to a sentence well in excess of any statutory mandatory minimum likely applicable to his case, the failure to advise him of such minimums during the plea hearing cannot reasonably be said to have affected his decision to accept the plea. *See Johnson,* 1 F.3d at 303. On the other hand, where it is not clear that a defendant was aware of the sentencing guideline range into which his relevant conduct would likely fall, the failure to inform him of the probable applicability of statutorily mandated minimums may well have impaired his ability to understand his situation fully. *See id.* n. 31. The relevant inquiry must center upon what the defendant actually knows when he pleads guilty—and without an affirmative indication in the record we cannot assume that he knows anything about the sentence restrictions he faces—, what information would have been added (or what corrections made) to his pool of knowledge by compliance with Rule 11 demands, and how the additional or corrected information would have likely affected his decisionmaking.

▌ From the sparse record in this case, it is impossible to say that Padilla knew that a statutory minimum of ten years would likely be applicable to his situation, or that at the least a five year minimum would almost surely bind the sentencing court.[2] And unlike a misapprehension about the minimum time of supervised release to which one is subject following completion of a known, lengthy prison term, *see United States v. Saenz,* 969 F.2d 294 (7th Cir.1992), ignorance about the necessity (or likelihood, *see Johnson, supra*) of serving many years in prison strikes us as an informational lack so serious that unless strong indications to the contrary are apparent from the record a court should presume it influenced a defendant's decision to plead guilty.

The government, however, points out that in Padilla's case the court, at sentencing, actually departed downward from the statutory minimum sentence of 10 years—as it may, *see* 18 U.S.C. § 3553(e)—on the government's motion noting Padilla's substantial assistance in the effort to prosecute his cohorts. The district court did in fact depart beneath the minimum sentence mandated by statute to be imposed for conspiratorial involvement with eight kilograms of cocaine (so attributed to Padilla by the presentence report and accepted by the court and all parties at sentencing).[3] The court chose as its ultimate sentence the low end of the range which it had initially determined to be applicable to Padilla's circumstance under the guidelines in the absence of the statutory ten-year minimum—87 months. For several, independent reasons this course, however, does not mitigate the harm of the plea hearing error. First, Padilla was never even informed, so far as we can tell, that he faced the lower mandatory minimum of five years, which his actual sentence did indeed exceed. The plea agreement merely provides that Padilla

---

2. The government contends that the presentence report correctly set out the ten year mandatory minimum applicable as a result of the conclusion contained therein that eight kilograms of cocaine were attributable to Padilla, and points out that at sentencing the district court, as required by Rule 32(a)(1)(A), ensured that Padilla had reviewed the report with counsel. Even if the report were not absent from the appellate record and we could confirm that it did provide an accurate statement of the relevant sentencing law, the fact that information conveyed to Padilla *after* he pleaded guilty corrected earlier omissions or misstatements does not abate the concern that such information was not provided to him at the crucial time—during the plea hearing. Nothing in the transcript of the sentencing hearing, or any other source within the appellate record, indicates that by the time of his plea Padilla was ever informed, or knew on his own, that the sentencing court would be laboring under the restrictions of five-year or ten-year statutory minimums. *Cf. United States v. Herndon,* 7 F.3d 55, 58–59 (5th Cir.1993) (per curiam).

3. Because the court's sentencing guideline calculations produced a range whose maximum fell beneath the ten-year statutory requirement, the statutory minimum itself automatically became the guideline sentence. *See* U.S.S.G. § 5G1.1(b); *United States v. Hayes,* 5 F.3d 292, 294–95 (7th Cir.1993). Thus, the 5K1.1 label attached to the motion for downward departure for substantial assistance was technically correct. *See* U.S.S.G. § 5K1.1 & App. Note 1.

would be sentenced according to the guidelines and the government would recommend the low end of the applicable range. The government also notes that Padilla stated at his plea hearing that he had discussed with his counsel the application of the guidelines to his case. But we do not know whether counsel accurately calculated the sentencing ramifications of Padilla's situation or relayed that information to him, and we cannot find this out from the limited record generated in this case (and generally created in these types of cases, see Fed.R.Crim.P. 11, 1983 advisory note). In fact, Padilla was subject to a mandatory minimum of five years of which there is no firm basis to conclude he was aware. Although sentencing guideline ranges do not represent minimum and maximum statutory sentences to which a defendant's attention must be brought under Rule 11, see *United States v. Salva*, 902 F.2d 483 (7th Cir.1990), one reason that this position is justifiable in drug cases (where quantity really is almost everything for sentencing purposes) is that a defendant's knowledge of applicable mandatory minimums and maximums largely insures his cognizance of the order of the risk presented by acceptance of criminal responsibility. "[I]n drug cases, ... awareness of a statutory minimum will, in and of itself, inform a defendant as to the gross ranges of drug quantities which the government contends may be involved...." *Herndon*, 7 F.3d at 58. So far as we can ascertain, Padilla lacked any insight on this score.

Second, the failure to inform Padilla about the ten-year minimum term, although ultimately not imposed in full, likely also influenced his decision to plead guilty. Even if Padilla accurately calculated the guideline score at which the district court would eventually arrive, the promises of substantial cooperation contained within the plea agreement coupled with the reassuring nature of the agreement indicate—especially when

considered in light of the fact that the government eventually did move for a downward departure at sentencing—that he likely pled guilty in anticipation of such a favorable motion. The failure to inform Padilla of the statutory mandatory term probably prevented him from appreciating what the relevant point of departure would be—that is, it is not unlikely that Padilla accepted the deal thinking that his cooperation could potentially decrease a guideline sentence of 87 months to something less. He did wind up getting a decrease, but one that started from the mandatory term and *ended up* at 87 months, a consequence Padilla may not have projected because of the flawed plea colloquy. The mandatory term, therefore, was relevant to the sentence Padilla ultimately received. Admittedly, the plea agreement did not bind the government to make a motion for downward departure nor was the district court obligated to grant one if made. However, such a motion was likely enough in the offing that failure to inform Padilla that his base sentence would be the mandatory minimum may very well have affected his decision to accept a guilty plea. Moreover, whatever Padilla's ultimate sentence, the relevant question is not "[w]hether the mandatory minimum had an effect on the sentence ... [but] whether awareness of a mandatory minimum would have affected the defendant's decision to plead guilty." *Herndon*, 7 F.3d at 58. We think it patent that the failure to inform a defendant of a mandatory five-year or ten-year minimum sentence cannot be deemed inconsequential to the decision to plead when no firm indication exists of the defendant's specific awareness at time of plea that a sentence of such an order is likely.

■ Part of the problem in a case like this is that drug quantity attribution is often not finally determined until sentencing, after the plea process is completed.[4] *See Barker v.*

4. Although drug quantity need not be specified in the indictment, sometimes an amount is incorporated into the charges. In the thirty-five count indictment returned in this case, only count nine, containing a substantive distribution charge against two of Padilla's codefendants, makes reference to a particular amount of cocaine ("over five (5) kilograms"). While count nine, along

with thirty-two other counts, was listed as an "object of the conspiracy" with which Padilla was charged in count two, this reference cannot cure the failure to properly warn of mandatory penalties. First of all, assertions about quantity in the indictment are at best only generally helpful and can be irrelevant or even misleading, especially when there are multiple counts and

*United States,* 7 F.3d 629, 634 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994). Thus, any information the district court could present the defendant about potential minimum and maximum penalties is typically somewhat speculative.[5] This, however, cannot relieve the court of its responsibility to make a defendant aware of his likely exposure. In *Herndon* and *United States v. Watch,* 7 F.3d 422 (5th Cir.1993), the fifth circuit dealt with situations similar to this one and analyzed the problem rather well and we adopt (with slight modification) some of its observations and admonitions:

> [T]here is absolutely no way to properly determine statutory minimum and maximum penalties under § 841(b) without appropriate knowledge as to the quantities involved. If the government chooses to play "hide the thimble" regarding drug quantities ... then we think it incumbent on the prosecution at the Rule 11 hearing to request the trial judge to advise the defendant as to all of the possible minimum and maximums of punishment under § 841(b) which could possibly be applicable as a result of appropriate determination of quantities using relevant conduct under the guidelines.

*Herndon,* 7 F.3d at 58. And more directly germane to this case:

> [A] prudent district judge hearing a plea from a defendant charged under an indictment or information alleging a § 841(a) violation but containing no [or ambiguous] quantity allegation[s should] simply walk a defendant through the statutory minimum

sentences prescribed in § 841(b) explaining that a mandatory minimum may be applicable and that the sentence will be based on the quantity of drugs found to have been involved in the offense with which the defendant is charged.

*Watch,* 7 F.3d at 429. It is not costly in time or effort to enumerate during the plea colloquy the several mandatory penalties potentially applicable when attributable drug quantities are uncertain. We recommend the practice.

■ Vacatur of Padilla's guilty plea would seem to be the appropriate remedy in light of the above discussion. But at oral argument counsel for Padilla apparently disclaimed any desire to abandon the plea and sought to limit relief to resentencing in accordance with Padilla's purported understanding of the agreement—namely, eighty-seven months minus some amount of time for his assistance in the other prosecutions.[6] We understand the new-found reluctance to forfeit the benefit of what was, all in all, not a bad deal. All bets would be off, and Padilla would be exposed to the risk of a more severe sentence upon reprosecution. Padilla, however, is not entitled to a more favorable sentence than the one he got, which was in accordance with the law and not precluded by the terms of the plea agreement. What he is entitled to is an opportunity to start over, since his decision to plead guilty was not accompanied by an adequate explanation of likely mandatory penalties. Because Padilla now disavows the only relief that is appropriate to the error he

multiple defendants and, as in this case, overarching cross-references linking partial and open-ended statements of amount. Moreover, a defendant is entitled to be informed, personally, of the mandatory *consequences* of his plea—i.e. the penalty itself, not just its statutory causal precursor. We doubt that informing a defendant at his plea colloquy of the drug quantity that will be attributed to him at sentencing would be a harmless violation of Rule 11, at least in the absence of an affirmative indication that the defendant knew the mandatory penal consequences that flow therefrom. Relying on raw drug quantities buried in the indictment is, if anything,

even less facilitative of assuring intelligently-made guilty pleas.

**5.** But this need not be the case. *See United States v. Salva,* 902 F.2d 483, 488 (7th Cir.1990) (commenting upon and commending the § 6B1.1(c) policy statement calling for district courts to defer acceptance of pleas until after preparation of the pre-sentence report).

**6.** At the beginning of her argument counsel stated: "We also want to advise the court that we are requesting a remand for sentencing, as opposed to a vacating [sic] of the plea agreement."

assigns, his conviction and sentence must be affirmed.[7]

---

**7.** Because Padilla no longer wishes to have his conviction vacated, we do not discuss the additional argument contained in his brief, claiming that the ineffective assistance of his original trial counsel rendered his guilty plea involuntary.