**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Javier DIAZ–VARGAS, Defendant–Appellant.**

No. 94–1081.

United States Court of Appeals, Seventh Circuit.

Argued July 7, 1994.

Decided Sept. 29, 1994.

---

the government recommending a sentence of no more than the higher of either the mandatory minimum required by statute or the low end of the applicable guideline range. At the plea hearing Diaz–Vargas acknowledged in open court that he had read the plea agreement, reviewed it with his attorney, understood its terms as well as the rights relinquished through a plea, and signed the agreement voluntarily. With respect to the possible sentence range, the court informed the defendant that considering his prior drug felony he faced a possible mandatory minimum sentence of ten years with a maximum penalty of life imprisonment. The court also specifically explained that it was not bound by the defendant's plea agreement, but would rely instead on the sentencing report prepared by the Probation Department. The court did not, however, give a separate, *verbal* Rule 11(e)(2)–type warning—that the plea once entered could not be withdrawn if the court decided to reject the government's sentencing recommendation and impose a longer term of imprisonment—but instead relied only on the *written* 11(e)(2) warning contained in the defendant's plea agreement. *See* Fed.R.Crim.P. 11(e)(2).

At sentencing defense counsel noted that the presentence report's calculations and factual information appeared correct. The presentence report released by the Probation Office computed a guideline range of 70 to 87 months. The government then requested pursuant to the plea agreement that the court impose the statutory mandatory minimum sentence, as this figure was greater than the applicable guideline range. Diaz–Vargas told the court that his prior attorney had promised him that he would receive a sentence of only five years if he pleaded guilty and that although his current counsel had promised to fight the enhancement by obtaining an affidavit from the attorney involved in the 1989 case, the attorney had not carried out this promise. In response, defense counsel explained that after checking into the records on the 1989 conviction, he was unable to identify any basis upon which to challenge the constitutional validity of the conviction. *See United States v. Custis,* ⸺ U.S. ⸺, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); *see also United States v. Mitchell,* 18 F.3d 1355 (7th Cir.1994).

Barry Rand Elden, Asst. U.S. Atty., Brenda Atkinson, U.S. Atty., Office of U.S. Atty. (argued), Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

John S. Young, Mundelein, IL (argued), for defendant-appellant.

Before CUDAHY, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Javier Diaz–Vargas argues that his drug conviction is invalid because he accepted a guilty plea without the court orally advising him that he would not be allowed to later withdraw this plea if the court departed from the government's recommended sentence. We find that any error that may have occurred in this case was harmless, and thus affirm.

## I. Background

Diaz–Vargas was indicted on various narcotics offenses and agreed to plead guilty to one count of conspiring to distribute more than a kilogram of cocaine in exchange for

In light of this alleged misunderstanding, the court explained that it was not bound by the plea agreement, and that Diaz–Vargas could still receive the maximum sentence. Then the court again questioned Diaz–Vargas whether he wished to withdraw his guilty plea before the court rendered a sentence. Diaz–Vargas unequivocally declined: "No, no. I—no, I don't want to change anything. I just simply wanted to make things clear." The court then proceeded to sentence Diaz–Vargas to the enhanced statutory mandatory minimum term of ten years imprisonment to be followed by eight years of supervised release. On appeal, Diaz–Vargas challenges his plea as unknowing and involuntary because, as he alleges, the court technically never gave him a verbal, 11(e)(2)–type warning.

## II. Analysis

■ Generally, a plea agreement between the government and a defendant is merely an exchange of the defendant's guilty plea for the government promised recommendation to the court for a reduced sentence. Once the government has made such a recommendation the bargain has been satisfied. The government's recommendation is just that, it does not bind the court's eventual sentence. *See* Fed.R.Crim.P. 11(e)(1)(B). If a defendant accepts a guilty plea he is accepting total responsibility for his crime and admitting his guilt. He cannot later withdraw his plea—even if the court decides to impose a sentence higher than that recommended by the government. *See* Fed. R.Crim.P. 11(e)(2). Thus while many a defendant may hope for a lighter sentence by accepting a plea, there are no guarantees; a plea agreement inherently contains some measure of risk.

■ In order to properly evaluate the risks of pleading guilty the defendant must understand and be informed of his rights and the consequences of his plea. Under Rule 11(e)(2) the trial court is required to advise the defendant that he cannot withdraw his plea even if the court does not accept the government's sentencing recommendation. This rule assures that the accused's decision to plead guilty is fully informed by disabusing the defendant of any mistaken notions he may have obtained during the plea bargaining process. *See United States v. DeBusk,* 976 F.2d 300, 305 (6th Cir.1992) (citing *United States v. Ferrara,* 954 F.2d 103, 107 (2d Cir.1992)); *see generally McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969).

■ Notwithstanding the strictures of Rule 11(e)(2), a harmless error in advising a defendant of his limited power to withdraw a plea will not disturb an otherwise valid sentence. *See* Fed.R.Crim.P. 11(h). The language of subsection (h) provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Declining to inform a defendant about his inability to withdraw an accepted plea after sentencing is not always a decisive oversight, but rather a matter dependent on the specific facts of each case. *See United States v. Padilla,* 23 F.3d 1220, 1221 (7th Cir.1994). The question of whether such an error may be harmless depends on " 'whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.' " *Id.* at 1221, (*quoting United States v. Johnson,* 1 F.3d 296, 302 (5th Cir.1993) (*en banc* )). Under *Padilla,* the relevant inquiry focuses on both how that information would have likely affected his decision to accept or reject a plea, and what additional information a special Rule 11(e)(2) admonition would have added to the defendant's knowledge. *Padilla,* 23 F.3d at 1222; *see also United States v. De-Cicco,* 899 F.2d 1531, 1534 (7th Cir.1990).

■ After considering the circumstances of this case in light of *Padilla,* we believe that any non-compliance with Rule 11(e)(2) was harmless; the defendant's conduct demonstrates that he still would have likely accepted his plea even if he were verbally given the exact 11(e)(2) warning, and that notwithstanding any oversight, Diaz–Vargas understood the plea process such that a 11(e)(2) warning would not have added to his knowledge.

At sentencing the court provided Diaz–Vargas with a special opportunity to withdraw his plea when the court first learned that the defendant might have been operating under a misunderstanding concerning

how the plea would be used to calculate his sentence. Diaz–Vargas claimed that he had misunderstood whether he had been guaranteed a maximum of five years by accepting the plea. The court again explained to the defendant that he had not received any guarantees by accepting a plea, and that the court was not bound by any agreement between the defendant and the government. The court then carefully questioned whether Diaz–Vargas wanted to go ahead and accept his plea notwithstanding this new understanding; Diaz–Vargas responded that he still wanted to accept his plea and receive his sentence. While the above colloquy is not precisely the same as a Rule 11(e)(2) warning, the court's explanation given in response to the defendant's misunderstanding addressed an 11(e)(2)–type concern—whether Diaz–Vargas had the guarantee of a maximum of five years. The court then gave Diaz–Vargas another opportunity to withdraw his plea before sentencing. We believe that the foregoing discussion, coupled with the opportunity to withdraw the plea, had an effect similar to the required warning by causing the defendant to reflect as to whether the court was bound by the plea agreement. We are confident that had Rule 11(e)(2) warning been given, the defendant would have responded in exactly the same manner and accepted his plea. Furthermore, an examination of the record shows that the defendant likely read and understood the details of the Rule 11(e)(2) standard warning contained in the written plea agreement. The agreement signed by Diaz–Vargas and his counsel explicitly stated that the defendant understood that the court was not bound by the plea agreement and was free to impose the maximum penalty. The written agreement also contained the following language capturing the Rule 11(e)(2) admonition: "the defendant further acknowledges that if the court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea." The defendant testified to the court that he read the plea agreement with his attorney and that he understood it. Diaz–Vargas also stated that he was satisfied with the agreement counsel had negotiated. The signed plea agreement, coupled with the defendant's testimony that he understood its terms (which expressly included the substance of a Rule 11(e)(2) admonition), indicates that Diaz–Vargas understood that he would be bound by the plea regardless of the actual sentence imposed.[1] *See DeCicco*, 899 F.2d at 1534.

■■■■ Inquiring only in all encompassing terms whether a defendant has read and understood a plea agreement is not the best method to ensure that a defendant understands the full implications of his decision. *See Padilla*, 23 F.3d at 1222. Generally, the preferred method is for the court to engage the defendant in a colloquy concerning the risk inherent in pleading guilty. *See, e.g., United States v. Ray*, 828 F.2d 399, 405 (7th Cir.1987). Thus, the court may more easily assess whether it needs to make more probing inquiries into the defendant's understanding. Nevertheless, unless there is reason to suspect that the defendant labored under confusion and misconceived notions, a defendant's declaration made in open court that he read and understood the plea agreement carries a presumption of verity. *See Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir.1994); *United States v. Seybold*, 979 F.2d 582, 589 (7th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993). While Diaz–Vargas also claims he was unable to fully comprehend the plea agreement because his educational level was limited to a G.E.D. and because his "tenuous grasp of the English language" lead to confusion surrounding the plea, the court provided Diaz–Vargas with an interpreter. Diaz–Vargas does not claim that he was unable to understand the interpreter or that the interpreter was incompetent. *See United States v. Alvarez–Quiroga*, 901 F.2d 1433, 1436–37 (7th Cir.), *cert. denied*, 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990). Unlike the defendant in *United States v. Theron*, 849 F.2d 477 (10th Cir.1988), who claimed a language barrier contributed to his confusion over the effect of the government's sentencing recommendation, Diaz–Vargas did not attempt to withdraw his plea either prior to

---

1. In any event, the court did in fact adopt the government's recommendation in imposing Diaz–Vargas' sentence, and thus, the defendant was not ultimately prejudiced in any way, whatever his ignorance.

sentencing or when he realized that he would not receive what he believed was the agreed sentence. *Id.* at 481; *United States v. Ferrara,* 954 F.2d 103, 106 (2d Cir.1992). A defendant's motion to withdraw his plea after sentencing may simply reflect *post hoc* disappointment with the outcome of sentencing rather than contemporaneous confusion with the nature of the plea. *See Theron,* 849 F.2d at 481. From this record we do not find any evidence that Diaz–Vargas was confused, and we see no indication that his decision to accept a plea was anything other than deliberately considered, knowing and voluntarily.

AFFIRMED.