**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph A. KRAUS, Defendant–Appellant.**

No. 96–2645.

United States Court of Appeals,
Seventh Circuit

Argued April 11, 1997.

Decided Feb. 9, 1998.

Donna R. Eide (argued), Christina McKee, Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

G. Murray Turner (argued), Mulhall, Turner, Hoffman & Coombs, Louisville, KY, for Defendant–Appellant.

Before CUDAHY, FLAUM, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

More than eight years ago, Joseph Kraus pled guilty to distributing cocaine and was sentenced to a prison term of 180 months. Six years later, we vacated that sentence pursuant to 28 U.S.C. § 2255 and returned the case to the district court for resentencing. On remand, the parties negotiated a new plea agreement pursuant to FED. R.CRIM.P. 11(e)(1)(C) providing for a period of incarceration not to exceed 121 months. The district court rejected that agreement. The parties subsequently revised the agreement to provide for a prison term not to exceed 151 months. The district court accepted that agreement, and ordered Kraus incarcerated for 151 months. Kraus appeals, contending that the district court violated Rule 11(e)(1) by effectively participating in the plea negotiations. Although the unusual facts in this case may not establish a literal violation of Rule 11, we reluctantly conclude that they do give rise to the appearance of a serious transgression, and we cannot say that the appearance of impropriety had no effect on the plea and sentence. In the exercise of our supervisory authority, we therefore vacate Kraus' plea, conviction, and sentence and remand for further proceedings.

## I.

In 1988, Kraus and several other defendants were indicted for cocaine distribution. Kraus elected to plead guilty to each of the

eight counts of the indictment naming him as a defendant. The plea agreement approved by the court provided that Kraus would be sentenced to a prison term of fifteen years. Kraus was ultimately ordered to serve a term of 180 months in prison, to be followed by a six-year period of supervised release. Kraus appealed, contending that the district court had improperly deemed him an "organizer" of the narcotics activity underlying the indictment (*see* U.S.S.G. § 3B1.1(a)) and had incorrectly calculated his criminal history category. We overruled those objections and affirmed Kraus' sentence in an unpublished order. *United States v. Lemons,* 909 F.2d 1486, 1990 WL 111358 (7th Cir.1990), *cert. denied sub nom. Kraus v. United States,* 498 U.S. 985, 111 S.Ct. 519, 112 L.Ed.2d 531 (1990).

Kraus subsequently sought relief from his sentence pursuant to 28 U.S.C. § 2255. Kraus argued that when the district court imposed a six-year term of supervised release as part of his sentence, it violated the terms of the plea agreement. We agreed that the plea agreement as written did not contemplate anything more than a prison term of fifteen years. Once the court approved that agreement, we observed, Kraus reasonably expected that the specified prison term would be the sum total of the sentence he received. Because he was not fairly apprised that the court might also impose an additional period of supervised release, the sentence actually imposed ran afoul of due process. We noted that if the district court believed that a term of supervised release was statutorily required, then it was obligated to reject the plea agreement and allow him to withdraw his guilty plea and negotiate a new plea agreement. *Kraus v. United States,* 48 F.3d 1221, 1995 WL 84624 (7th Cir.1995) (unpublished).

On remand, the district court, acting on our suggestion, withdrew its approval of the plea agreement, permitted Kraus to withdraw his guilty plea, and gave the parties the opportunity to draft a new plea agreement. The parties came to a new agreement providing, pursuant to Rule 11(e)(1)(C), that Kraus' sentence would include a prison term of no more than 121 months, to be followed by a period of supervised release selected by the court. R. 13. Their agreement was filed with the court on July 17, 1995, and a new pre-sentence report was ordered.

On September 19, 1995, the parties appeared before the court for a change of plea hearing and sentencing. At the outset of that hearing, however, the court indicated that it was not inclined to accept the plea agreement. Tr. Sept. 19, 1995 at 4. Subsequent questioning revealed that the parties had agreed to the proposed sentencing cap of 121 months with an eye on a pending dispute as to whether Kraus played an aggravating role in the offense such that his offense level should be enhanced pursuant to section 3B1.1 of the Sentencing Guidelines.[1] A sentence of 121 months represented the low end of what the sentencing range would be (121 to 151 months) if Kraus's offense level were adjusted upward by three levels under that section of the Guidelines, as the government believed it should be. *See* U.S.S.G. § 3B1.1(b) (1994).[2] At that point the court, indulging the assumption that it would embrace the three-level aggravating-role enhancement that the government urged, indicated that a sentence of 121 months was not appropriate. "[M]y concern," the court explained, "is that the low end of the guideline range would

---

1. The typical Rule 11(e)(1)(C) agreement calls for the imposition of a specific sentence, rather than an upper limit on the sentence as the parties proposed here. *See United States v. Barnes,* 83 F.3d 934, 938 (7th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996). Consistent with the terms of the proposed plea in this case, we shall refer to the proposed "cap" rather than the proposed sentence.

2. The probation officer believed that Kraus merited a four-level enhancement as an organizer or leader of the criminal activity. *See* § 3B1.1(a).

A four-level enhancement would yield a sentencing range of 135 to 168 months. Kraus himself contended that he did not play an aggravating role in the offense and that no enhancement was appropriate. If he prevailed in that assertion, the resulting sentencing range would be 87 to 108 months. Kraus took the position that even if the court accepted the plea agreement, he remained free to ask for a sentence below proposed term of 121 months in the event the court agreed with him that no aggravating-role enhancement was warranted under section 3B1.1. *See* Tr. Sept. 19, 1995 at 6–7.

**450**

never be sufficient punishment under the circumstances, for this[ ] judge." Tr. Sept. 19, 1995 at 7. In addition to unspecified "other aggravating circumstances" (*id.*), the court cited Kraus' "enhanced role" vis à vis several of his less culpable co-defendants—who had received sentences of 120 and 121 months (*id.* at 8)—as well as the possibility that his criminal history category underrepresented the gravity of his prior criminal conduct (*id.* at 10) as the justifications for its concern. The court then announced that "unless ... there is something I've overlooked ... that I ought to take into account, I will declare to you that the 11(e)(1)(C) agreement is unacceptable to the court." *Id.*

The court's decision to reject the proposed agreement prompted a series of questions from the Assistant United States Attorney. She first attempted to nail down exactly what the court found objectionable in the agreement.

> AUSA: Is it the cap itself, the one hundred and twenty-one months, that's unacceptable, or is it the method, the 11(e)(1)(C) method that's unacceptable in this case?
>
> THE COURT: Well, I mean the recommended cap—and then of course I've got discretion under [an] 11(e)(1)(B) agreement,[3] then I would have discretion. And so I would say that it's a combination. What I'm telling you is that a hundred and twenty-one months, under all these circumstances, is not likely to be my sentence because it's not high enough, not enough time.

*Id.* at 11. The prosecutor then inquired whether "there is any possibility of us reaching an agreement that the court would accept in this case." *Id.* at 11–12. That question elicited the following response:

> THE COURT: Well, yes, I'm sure there is. I mean, I'll have to impose a sentence.
>
> I guess your question is whether you can either divine what it is that I am

going to do. I don't know precisely what I'm going to do, but I am telling you that it wouldn't be one hundred and twenty-one months. So you can either reach another 11(e)(1)(C) agreement, if you are able to, or you can open it up so that the court has some more play for some of these other considerations. I don't know; I will have to hear the parties on all of that. But it would be basically compelled by, if I accepted this agreement, to impose a sentence not greater than one hundred and twenty-one months is a control that I won't yield to.

> So I don't think I ought to participate any further in your negotiations—
>
> AUSA: Thank you.
>
> THE COURT:—deliberations, so it's a matter that you have to hammer out with each other.
>
> So let me just ask—I know that I have left you with a lot to do, but it might be that you can make headway on that while Mr. Kraus is on the premises and so forth. So I will recess the proceedings, and I don't have anything else on the court calendar this afternoon, so you can let me know in an hour or so if you want the court to resume and consider this matter, or if you think that we [had] better recess for another day. But go ahead and use the fact that Mr. Kraus is here and you are all here, and see what you can do. All right?

*Id.* at 12–13. The hearing was recessed, and no further proceedings were conducted that day.

The prosecutor subsequently reviewed the relevant provisions of the Sentencing Guidelines and decided that she would propose a second Rule 11(e)(1)(C) agreement with an incarceration cap of 151 months (the top of what the government believed the sentencing range should be). R. 67 Affidavit ¶ 4. On September 20, 1995, not yet having conveyed that offer to the defense, the AUSA tele-

---

**3.** Whereas Rule 11(e)(1)(C) enables the parties to propose a particular sentence that the court will be obligated to impose if it approves the agreement, Rule 11(e)(1)(B) permits the parties in the alternative to recommend a particular sentence to the court while reserving to the court the discretion to impose a different sentence. *See United States v. Barnes, supra* n. 1, 83 F.3d at 938–39.

phoned the district court's room clerk to apprise her of the status of the plea negotiations and disclosed to the clerk the revised cap she was contemplating. *Id.* ¶ 5. The clerk remarked that the higher number appeared to have "credence," although she added that there was no guarantee as to what the court would do. *Id.* The district judge was not a party to this telephone call nor, so far as the record reveals, did the judge have any contemporaneous knowledge of the call. *See id.*

On September 21, 1995, the day after she spoke with the room clerk, the AUSA contacted Kraus' counsel and proposed the revised cap of 151 months. *Id.* ¶ 6. The AUSA also revealed that she had spoken to the room clerk and conveyed the substance of the clerk's reaction to the new cap to Kraus' counsel. *Id.* Defense counsel subsequently relayed the offer to Kraus.

According to Kraus (we do not have the benefit of any affidavit from his counsel), when he heard that the prosecutor was proposing a cap of 151 months, he asked his counsel why he had not secured the government's agreement to a cap of 135 months (near the middle of the Guidelines range, assuming that he were given the three-level aggravating-role enhancement), as Kraus himself had previously suggested. R. 36 ¶ 10C. Kraus' counsel purportedly responded that in view of remarks "made by a third party connected to the Court," it was apparent that the district court was not going to accept a cap of less than 151 months. *Id.*

Acting pro se, Kraus subsequently filed a motion asserting that the district judge had violated Rule 11 by participating in the parties' plea discussions and asking that she recuse herself on that basis. R. 34.[4] In his supporting memorandum, Kraus argued that the court had effectively intervened in the plea negotiations at the September 19 hearing by commenting as to the type of sentenc-

ing restrictions that it would or would not accept and again two days later when "a third party from the Court," acting as the district court's "intermediary," indicated to the AUSA that a cap of 151 months would be acceptable. R. 35 at 2–4, 5. With the motion and memorandum Kraus submitted his own affidavit, which described among other things the conversation he had had with his attorney about the 151–month cap that the prosecutor had discussed with the court's clerk. R. 36 at 4–6, ¶ 10. So far as the record reveals, the government made no response to the motion, nor was it asked to do so.[5]

The district court denied the motion in a written order. The order was silent as to the allegations concerning the discussion of the revised plea between the AUSA and the court's room clerk. Instead, the court focused on the remarks it had made at the September 19 hearing, when it rejected the initial plea agreement.

> What the defendant complains of now is that the court articulated its reason for rejecting the plea agreement. While he may disagree with either the wisdom or the correctness of that decision, it provides no basis whatever on which to cause the undersigned to either be disqualified or to recuse. His view that the court impermissibly "participated" in the plea negotiations is not supported by the record, which shows only the court's observations to the parties concerning the manner in which they could proceed. The defendant is grasping at straws with this contention and in doing so finds support neither in the applicable law nor the facts of this particular case.

R. 39 at 3 ¶ 10; *see also* R. 41.

After the district judge declined to recuse or disqualify herself, Kraus signed the revised plea agreement proposing the cap of

---

4. This was one of three motions for recusal or disqualification that Kraus filed. As our focus is on the Rule 11 issue, we need not discuss the other two motions, which the district court also denied.

5. After Kraus filed this appeal, the district court permitted the government to supplement the rec-

ord with the affidavit of the AUSA who negotiated the plea agreement with the defense. That affidavit confirms that prosecutor spoke with the court's room clerk about the 151–month cap and conveyed the clerk's observation as to the "credence" of that cap to the defense. R. 67.

151 months. R. 40.[6] The district court approved that agreement and sentenced him accordingly to a prison term of 151 months and a five-year period of supervised release. R. 54; R. 57 Tr. June 26, 1996. In sentencing Kraus, the court concluded that Kraus qualified as a manager or supervisor of the conspiracy; his offense level was therefore enhanced by three rather than four levels. *See id.* at 38–43; U.S.S.G. § 3B1.1(b).

## II.

Kraus raises three issues in this appeal, but we need only address his first and principal argument that his guilty plea is tainted by the district judge's alleged participation in the plea discussions. His second argument—that the district judge had a preconceived and fixed idea that he was more culpable than the other defendants and should have recused herself for that reason—is moot in view of our conclusion that the apparent violation of Rule 11 requires that his plea be vacated and that the case be reassigned on remand to a different judge. His third argument concerns the propriety of the three-level enhancement that the district court imposed under Guidelines section 3B1.1(b). That too is rendered moot by vacation of Kraus' guilty plea and is of course open to renewed discussion on remand in the event Kraus again elects to plead guilty or is convicted after a trial. With this having been said, we turn our attention to the district court's role in the plea negotiations.

Although Federal Rule of Criminal Procedure 11(e)(1) embraces the time-honored practice of plea negotiations, the Rule also provides that "[t]he court shall not participate in any such discussions." The proscription against judicial intervention has been widely construed as categorical, *see United States v. Miles,* 10 F.3d 1135, 1139 (5th Cir. 1993) (collecting cases), "admit[ting] of no exceptions," *United States v. Bruce,* 976 F.2d 552, 555 (9th Cir.1992). *See also United States v. Brighton Bldg. & Maintenance Co.,* 431 F.Supp. 1115, 1116 (N.D.Ill.1977) (Flaum, J.). Underlying the rule is a recognition that

the judge, by virtue of her office, can never engage in plea negotiations as a co-equal participant:

The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence.

FED.R.CRIM.P. 11 advisory committee's note (1974 amendment), quoting *United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244, 254 (S.D.N.Y.1966) (Weinfeld, J.); *see also United States v. Adams,* 634 F.2d 830, 835 (5th Cir. Unit A Jan.1981): Excluding the judge from the plea discussions thus serves three purposes: it minimizes the risk that the defendant will be judicially coerced into pleading guilty, it preserves the impartiality of the court, and it avoids any appearance of impropriety. *Miles,* 10 F.3d at 1139; *see also United States v. Casallas,* 59 F.3d 1173, 1178 (11th Cir.1995); *United States v. Garfield,* 987 F.2d 1424, 1426–27 (9th Cir.1993); *Bruce,* 976 F.2d at 556–58; *United States v. Werker,* 535 F.2d 198, 201–03 (2d Cir.), *cert. denied sub nom. Santos–Figueroa v. United States,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976).

■ Of course, once the parties have themselves negotiated a plea agreement and presented that agreement to the court for approval, it is not only permitted but expected that the court will take an active role in evaluating the agreement. *United States v. Crowell,* 60 F.3d 199, 204 (5th Cir.1995); *Miles,* 10 F.3d at 1140; *Adams,* 634 F.2d at 835; *Brighton Bldg. & Maintenance Co.,* 431 F.Supp. at 1116–17. Rule 11 advisory committee's note (1974 amendment) ("It is con-

---

**6.** In the interim, Kraus had sought relief in this court by way of a petition for a writ of mandamus. We denied the petition in a brief, unpublished order issued on April 19, 1996. *Kraus v. Barker,* No. 96–1619.

templated that the judge may participate in such discussions as may occur when the plea agreement is disclosed in open court."). Preeminently, the court must make sure that the defendant's plea is both voluntary and knowing. Rule 11(c), (d); *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *see also Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Indeed, it is exactly because the court plays such a vital role in assessing the validity of the plea that it must remain removed from the discussions culminating in that plea, lest its objectivity and impartiality be compromised. *Miles*, 10 F.3d at 1140; *United States v. Barrett*, 982 F.2d 193, 195 (6th Cir.1992); *Bruce*, 976 F.2d at 557; *Adams*, 634 F.2d at 835, 839, 841.

▪ The court's authority vis à vis the plea agreement extends beyond the obligation to ensure that it is not the result of coercion or ignorance, however. The defendant has no absolute right to have his guilty plea accepted by the court. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). On the contrary, "[a] court may reject a plea in [the] exercise of sound judicial discretion." *Id.*, at 262, 92 S.Ct. at 498. Thus, where the parties have agreed to a particular sentence pursuant to Rule 11(e)(1)(C), for example, the court has the power—and under the Sentencing Guidelines, the explicit obligation—to consider whether that sentence is adequate and to reject the plea agreement if the court finds it not to be. U.S.S.G. § 6B1.2(c)[7]; *see Crowell*, 60 F.3d at 204 ("We have no doubt that [the court's evaluation of the plea] may include a consideration of the punishment allowable under the agreement, as compared to the punishment appropriate for the defendant's conduct as a whole."); *United States v. Skidmore*, 998 F.2d 372, 376 (6th Cir.1993) ("Rule 11 does not limit the reasons for which the district court may reject a proposed plea agreement; rather, its terms permit a district court to reject a plea agreement either because the proposed agreement

is too lenient or because it is too harsh."). Yet, a court may not act arbitrarily (*United States v. Moore*, 916 F.2d 1131, 1136 (6th Cir.1990)); if it elects to reject a plea agreement, it must be able to "articulate a sound reason" for doing so. *United States v. Delegal*, 678 F.2d 47, 50 (7th Cir.1982) (citing *United States v. Davis*, 516 F.2d 574, 578 (7th Cir.1975)); *see also United States v. Ritsema*, 89 F.3d 392, 398 n. 5 (7th Cir.1996); *United States v. Greener*, 979 F.2d 517, 519 (7th Cir.1992); *accord United States v. Maddox*, 48 F.3d 555, 558 (D.C.Cir.1995) (collecting cases); *Moore*, 916 F.2d at 1135–36. Requiring the court to state on the record its reasons for rejecting a plea agreement "is the surest way to foster the sound exercise of judicial discretion." *Moore*, 916 F.2d at 1136 (citing *Delegal*, 678 F.2d at 50). Naturally, it also facilitates appellate review when the defendant contends that the district court abused its discretion in rejecting a plea. *Davis*, 516 F.2d at 578.

▪ So long as a plea agreement is properly before the court, then, the court may and, under our precedent, must explain why it finds the agreement objectionable. Pragmatically speaking, by signaling what has motivated the court to reject an agreement, the court's remarks no doubt will have an effect on any future negotiations. *See Crowell*, 60 F.3d at 204. The possibility that the parties may subsequently rely on the court's comments in crafting a new plea agreement does not alone establish a violation of Rule 11(e)(1), however. So long as the court speaks in the context of "actively evaluating a plea agreement" (*id.*) and its remarks are confined to the agreement before it, the court does not become a participant in the plea negotiations in violation of Rule 11. *Id.* But the court's authority to comment is confined to an agreement that the parties have themselves finalized and that has been properly put before the court for approval pursuant to the rule. *Brighton Bldg. & Maintenance Co.*, 431 F.Supp. at

7.  The Guideline provides:
    In the case of a plea agreement that includes a specific sentence [Rule 11(e)(1)(C)], the court may accept the agreement if the court is satisfied either that:

    (1) the agreed sentence is within the applicable guideline range; or
    (2) the agreed sentence departs from the applicable guideline range for justifiable reasons. U.S.S.G. § 6B1.2 (1994); *see also id.* comment.

1116–17. Once the court has rejected that agreement, its license to speak about what it finds acceptable and unacceptable—to suggest an appropriate sentencing range, for example—is at an end. *Crowell,* 60 F.3d at 204.

■ The district court's initial remarks at the plea hearing were well within these boundaries. In evaluating the plea agreement put before it, the court noted that the proposed prison term of 121 months fell at the low end of the Guidelines range (assuming that the government prevailed on the 3B1.1 issue). Given the history of the case, the court was of course familiar with the underlying facts—it had accepted the pleas of Kraus and his co-defendants and had sentenced each of them; it also had before it the lengthy affidavit of the case agent to which both sides had stipulated. *See* Tr. Sept. 19, 1995 at 7; Affidavit of FBI Special Agent William B. Wagoner dated July 22, 1988 & Amendment dated July 26, 1988 in support of Criminal Complaint. Considering what she knew about the case and Kraus' involvement in the criminal activity charged, the district judge concluded that a sentence at the low end of the Guidelines range would be inappropriate. For that reason, she rejected the agreement. This is exactly the kind of "active evaluation" of the plea agreement that Rule 11 and the cases interpreting it envision. *See Crowell,* 60 F.3d at 201–02, 203–04 (court compared proposed sentence with punishment the defendant might receive if he were convicted on all counts of the indictment and concluded that the sentence permitted by the plea agreement would not be commensurate with the aggravated nature of the defendant's conduct or the harm to his victims).

■ The remarks that the court made at the conclusion of the hearing are much closer to the outer boundaries of what Rule 11 permits, however. We refer here to the discussion prompted by the prosecutor's questions. When the AUSA inquired whether it was the particular cap of 121 months itself that the court found objectionable, or any type of Rule 11(e)(1)(C) cap at all, she was arguably asking the court simply to clarify the grounds for its rejection of the plea.

To that extent, the question as well as the court's answer (reiterating that a 121–month sentence was not high enough under the circumstances of the case) were appropriate. But when the AUSA next inquired "if there is any possibility of us reaching an agreement that the court could accept in this case" (Tr. Sept. 19, 1995 at 12), she invited the court into the realm of hypothetical agreements from which Rule 11 absolutely bars the district court.

Strictly speaking, Rule 11 prohibited any answer to the prosecutor's inquiry other than an admonition that the question itself was improper. *Miles,* 10 F.3d at 1139–40. At that point, the court had already rejected the agreement submitted for its approval and had (twice) explained its reasons for doing so. Any attempt to answer the question with a "yes" or a "no" was fraught with peril. A "no" answer, in fact, would have run afoul of our cases indicating that a defendant is entitled to plead guilty unless the court can articulate a "sound reason" for rejecting the plea. *See Delegal* and the other cases cited at page 453, *supra; see also United States v. Anderson,* 993 F.2d 1435, 1439 (9th Cir.1993). A "yes" answer, standing alone, might not have been problematic; when the court here acknowledged that the parties of course might be able to reach an agreement that was acceptable, for example (Tr. Sept. 19, 1995 at 12), it obviously said nothing extraordinary. And when the court added that it was not sure "precisely" what it would do when it sentenced Kraus, but reiterated that the sentence would not be 121 months (*id.*), it merely emphasized for a final time what it had already properly said in rejecting the plea agreement. But any elaboration as to the kind of plea agreement that might satisfy the court's concerns would necessarily have the effect of guiding any future plea negotiations. *See Miles,* 10 F.3d at 1141; *Adams,* 634 F.2d at 835; *Werker,* 535 F.2d at 203. That is why we are not entirely comfortable with the district court's subsequent observation that "you can either reach another 11(e)(1)(C) agreement, if you are able to, or you can open it up so that the court has some more play for some of these other considerations." Given that the court had rejected

the proposed sentence as too low, it was rather obvious that any future agreement would either have to include a more lengthy proposed sentence or otherwise permit the court to select a higher sentence. In that respect, any effect that the court's observation actually had on the parties' re-drafting of the plea agreement was very likely minimal. Still, the court's remarks almost surely had the effect of directing the parties toward one set of alternatives to the possible exclusion of others that the parties themselves might have explored. *See Miles,* 10 F.3d at 1141; *Adams,* 634 F.2d at 835; *Werker,* 535 F.2d at 203.

In this respect, the case before us is comparable to *United States v. Crowell, supra.* There the district court had rejected an initial plea agreement, expressing concern that the maximum sentence permitted by that agreement would not adequately reflect the gravity of the defendant's conduct. After the parties later tentatively agreed to a revised plea, they decided before finalizing the agreement to outline its terms to the district court to see whether the court anticipated any problems. After pointing out that it would have to see a finalized agreement before passing judgment, the court made the following remarks regarding its decision to reject the earlier plea:

> My concern before, as I indicated, was I didn't think that the sentence that could be imposed under the prior plea agreement adequately addressed the defendant's conduct as contemplated—and that I didn't have any choice but to reject it under the policy statement of the guidelines that governs what we'll do when we are presented with a plea agreement.
>
> I felt that a sentence significantly in excess of what he likely would serve under the prior plea of guilty and plea agreement would be required for the sentence to adequately address his criminal conduct.

60 F.3d at 202. The parties subsequently finalized their agreement and submitted it for the court's approval. Again the court rejected the agreement, prompting the parties to give up and proceed to trial. After he was convicted by a jury, the defendant appealed, arguing that the district court had improperly participated in the plea negotiations by making the remarks we have quoted above when asked to preliminarily screen the tentative plea agreement. The Fifth Circuit agreed:

> The court's comments ... indicate the court's feeling that a penalty significantly more severe than that allowed under the first plea agreement would be necessary for an agreement to be acceptable. The fact that this comment was injected into the discussions while the parties were still preparing the second agreement is critical. It is precisely this kind of participation that is prohibited by Rule 11. Although not as blatant as the suggestion of particular terms of imprisonment in *Miles,*[8] we find that the court's comments ... constituted a violation of Rule 11.

60 F.3d at 204.

■ The district court's remarks in this case were arguably somewhat less explicit than the comments addressed in *Crowell.* The district court here did not call for a "significantly" greater sentence, for example; it simply reiterated that the plea agreement in one way or another would have to allow for a prison term longer than 121 months. The court also did not speak in the context of screening a tentative plea agreement as the court had in *Crowell.* But the court *was* speaking after it had already rejected the plea agreement, and it spoke in response to the prosecutor's question as to what kind of plea agreement it might accept, if any. As *Crowell* indicates, remarks directed to future or ongoing plea negotiations which suggest what will satisfy the court transform the court from an impartial arbiter to a participant in the plea negotiations. 60 F.3d at 203, 204.

8. In *Miles,* as in this case, the district court's rejection of a plea agreement prompted the prosecutor to ask whether there was any alternate arrangement that the court might consider. The court, after first remarking that it would be inappropriate for it to indicate what type of plea it might accept, observed "I will say this: If I was satisfied that these people likely would never get out of prison I would feel more comfortable." 10 F.3d at 1138. The court proceeded to identify the kind of sentencing range that would satisfy its concerns. *Id.* at 1138–39.

■ Compounding the problem in this case significantly is the interchange between the prosecutor and the district court's room clerk regarding the new sentencing cap of 151 months that the prosecutor intended to offer the defense. The parties agree that this conversation occurred and that the substance of the clerk's favorable reaction was conveyed to Kraus's counsel along with the offer, who in turn reported the clerk's remark to Kraus. Any attempt to solicit the room clerk's views on the proposal was, of course, improper, however benign the purpose of the inquiry may have been. Judicial employees, whether they be law clerks, secretaries, or courtroom deputy clerks, enjoy access to a judge's innermost thoughts (*see Hall v. Small Business Admin.,* 695 F.2d 175, 179 (5th Cir.1983)); they consequently bear a duty of loyalty and confidentiality that precludes them from opining how the judge will rule. Inviting an employee of the court to speculate on how the judge might react to a particular request or proposal is thus no more proper than asking the judge herself to so speculate.[9] Of course, it may be the case that the prosecutor mentioned the new plea cap to the room clerk only inadvertently.[10] But the *appearance* is one of a deliberate inquiry: why else mention the proposal to the clerk before it is even communicated to the defense if not to attempt to get some sense of how the court was likely to react before the new agreement was finalized, and

why else pass on the clerk's reaction to the defense? Substituting the room clerk for the court, the sequence of events in this case is not so different from what took place in *Crowell:* the terms of an inchoate plea agreement were floated before the court, and only after a favorable response was received did the parties finalize their agreement and initiate a Rule 11 hearing. There is an even more serious ramification here, for as Kraus recounts events—and, again, his account is undisputed—his counsel cited the clerk's remark as a reason for Kraus to accept the new cap in lieu of the 135 months that Kraus had himself proposed. R. 36 ¶ 10C, D. Not just in appearance but in effect, then, the conversation between the prosecutor and the clerk influenced the parties' subsequent negotiation and finalization of the revised plea. That effect is precisely what Rule 11's proscription against judicial involvement in plea negotiations seeks to avoid.

We have no doubt that this case would present a straightforward violation of Rule 11(e)(1) if the district judge herself had previewed the prosecutor's proposal and deemed it credible. The fact that the court's clerk instead did so is the only circumstance that arguably confines the case to the appearance of a violation rather than an actual violation of the rule. From the defendant's point of view, however, there is little practical difference. A court and an attorney can appreciate the distinction, but the undisputed facts

---

**9.** The conflicts and missteps of a judge's staff are not lightly imputed to the judge herself. *See, e.g., Parker v. Connors Steel Co.,* 855 F.2d 1510, 1525 (11th Cir.1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989). We reiterate that there is no evidence that the district judge herself was even aware of, let alone endorsed, the room clerk's remark that the 151–month cap had "credence." On the contrary, the clerk to her credit admonished the prosecutor that she could not predict what the judge would have to say about that new cap. Nor do we for a moment think that the clerk's own opinion as to the new cap had any impact upon the judge's subsequent evaluation and approval of the plea agreement. Even so, coming from an employee of the court who occupies a position of enormous trust, any opinion voiced by the clerk was bound to carry far greater weight than the opinion of a mere bystander. Accurately or not, a party and its counsel are quite likely to perceive that the clerk's opinion as to a matter pending before the court is founded in some

measure on the clerk's knowledge of and insight into the judge's thoughts. *Cf. Hall,* 695 F.2d at 179 ("Law clerks are not merely the judge's errand runners.... Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be."); *Fredonia Broadcasting Corp. v. RCA Corp.,* 569 F.2d 251, 256 (5th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978) (same). Had she lacked the status of an "insider," the clerk's thoughts as to the "credence" of the new sentencing cap would not have merited disclosure to defense counsel and again to the defendant.

**10.** Indeed, we should note that at argument, the government indicated that the prosecutor disclosed the details of the proposed cap only after the clerk herself asked about it. The prosecutor's affidavit, however, does not indicate that the disclosure was triggered by the clerk's inquiry. R. 67 Affidavit ¶ 5.

suggest that it appeared to Kraus (and for that matter, to his attorney), that the court itself had given its blessing to the 151–month proposal. We cannot say with any degree of confidence that Kraus' perception was unreasonable.

We have considered whether the error in this case, or the appearance of error, was harmless, and we have concluded that it was not. Rule 11(h) states that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." *See, e.g., United States v. Akinsola,* 105 F.3d 331, 334 (7th Cir.1997); *United States v. Cross,* 57 F.3d 588, 591 (7th Cir.), *cert. denied,* 516 U.S. 955, 116 S.Ct. 406, 133 L.Ed.2d 324 (1995); *United States v. Diaz–Vargas,* 35 F.3d 1221, 1224 (7th Cir.1994). We note that when Kraus ultimately pled guilty pursuant to the second plea agreement that the court accepted, he stated during the plea colloquy that he was doing so freely and voluntarily and that no one had persuaded or coerced him into the agreement. R. 57, Tr. June 26, 1996 at 12, 17–18; *see also id.* at 22. Standing alone, that acknowledgment could be taken as a sign that any nonconformity with Rule 11 did not prejudice Kraus. But insofar as judicial intervention in the negotiation of a plea agreement is concerned, the possibility of harmless error may be more theoretical than real. *See Miles,* 10 F.3d at 1141; *Bruce,* 976 F.2d at 558; *see also, e.g., Casallas,* 59 F.3d at 1178; *Garfield,* 987 F.2d at 1427. " 'Rule 11 is obviously intended *totally* to eliminate pressures emanating from judicial involvement in the plea bargaining process....' " *Barrett,* 982 F.2d at 196, quoting *Werker,* 535 F.2d at 203 (emphasis in *Barrett* ). Once a court has involved itself in plea discussions—and particularly where it has voiced some opinion as to the parameters of a prospective plea agreement not yet finalized by the parties and submitted for approval—any hint that the court has given as to what it might approve or not approve will inevitably affect the parties' own efforts to craft an agreement acceptable to them. *See Adams,* 634 F.2d at 841. The actual impact will often be difficult to quantify. But the rule is focused on pressures—blatant or subtle—that the judicial office brings to bear on the process of negotiating a plea. *Id.* at 841–42; *Barrett,* 982 F.2d at 196. Those pressures do not vary depending on the facts; they are inherent in judicial intervention. Consequently, "[the defendant's] responses to the judge's questioning during the formalistic [plea] colloquy do not allay our concerns regarding voluntariness." *Anderson,* 993 F.2d at 1438.

Were we dealing solely with the remarks that the district court made after it rejected the first plea agreement, we might be more inclined to deem harmless any actual or apparent violation of Rule 11. We have pointed out that these remarks are not a far cry from the comments that the Fifth Circuit found problematic in *Crowell;* and addressed as they were to hypothetical plea agreements, they arguably were the kind of statements that Rule 11 proscribes. One might also say that the remarks "create the appearance of a premature commitment to a sentence of at least a certain level of severity." *Crowell,* 60 F.3d at 205. But again, viewed in context they largely reiterate the rationale that the court had already properly articulated in rejecting the plea agreement. Because the district court had already made clear that the sentencing cap proposed in the first agreement was not substantial enough, the court's subsequent remarks suggesting that a revised plea agreement would have to permit a higher sentence added little to the equation.

However, in the immediate wake of the court's own remarks, we have the room clerk's apparent endorsement of the higher cap proposed by the prosecutor. Kraus' affidavit indicates that the clerk's view was pressed forcefully upon him as a reason to accept the prosecutor's proposal as the most favorable arrangement that the district court was likely to approve. R. 36 ¶ 10C, D. We have no way of knowing what cap the parties might have agreed to in the absence of the clerk's unfortunate involvement in the discussions. *See Miles,* 10 F.3d at 1141–42. It is clear, however, that the clerk's remark helped to convince Kraus to accept a sentence more than a year longer than he and his counsel were intending to propose. Under these circumstances, the appearance of a Rule 11 violation fostered by the clerk's re-

mark cannot be described as harmless. *See id.* at 1141.

### III.

Rule 11 may not by its terms compel vacating the plea given that the district court itself was not involved in the most troubling conduct here, but given the appearance of impropriety, we conclude that the exercise of our supervisory authority warrants that step nonetheless. *See McCarthy v. United States, supra,* 394 U.S. at 463–64, 89 S.Ct. at 1169; *Adams,* 634 F.2d at 836. Judicial participation in plea negotiations implicates one of the core concerns of Rule 11 (*see Miles,* 10 F.3d at 1140, citing *Adams,* 634 F.2d at 839); and vacating a plea and sentence that may have been affected by such participation best serves the prophylactic purpose of the rule (*see Miles,* 10 F.3d at 1142 & n. 10) (collecting cases). Kraus is entitled to the opportunity to negotiate a plea free of any actual or apparent intervention by the court. We therefore VACATE Kraus' conviction and sentence as well as the guilty plea on which they are founded and REMAND for further proceedings consistent with this opinion. Although we have no doubt whatsoever as to the objectivity of the able and experienced district judge, in the interest of eliminating any lingering appearance of judicial involvement in the plea process, we direct that Circuit Rule 36 apply on remand. *See id.* (collecting cases).