In the
United States Court of Appeals
For the Seventh Circuit

No. 98-1146

United States of America,

Plaintiff-Appellee,

v.

Guillermo Fernandez,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 96-CR-40087--William L. Beatty, Judge.

Argued November 29, 1999--Decided March 9, 2000

Before Bauer, Easterbrook, and Evans, Circuit
Judges.

Bauer, Circuit Judge.  One month after pleading
not guilty to a one-count indictment charging him
with conspiracy to distribute marijuana,
Guillermo Fernandez ("Fernandez") changed his
mind and pleaded guilty. The district court then
sentenced Fernandez to 235 months in prison for
his role in the conspiracy. On appeal, Fernandez
argues that his guilty plea and ensuing sentence
should be vacated because of errors committed
during his change of plea hearing. Because we
conclude that the district court did not properly
inform Fernandez of his rights at his change of
plea hearing, we vacate Fernandez' conviction and
sentence and remand so Fernandez may enter a new
plea.

I.  Background

On October 23, 1996, a federal grand jury in
the Southern District of Illinois returned a one-
count indictment charging Fernandez and four
others with conspiring to distribute marijuana in
violation of 21 U.S.C. sec.sec. 841(a)(1) and
846. The indictment alleged that Fernandez
participated in a conspiracy to transport
approximately 453 kilograms/1 of marijuana from
southern Texas to points in Kentucky and
Illinois. According to the conspirators' plans,
about half of the marijuana was to be delivered

to Fernandez or his agents in Louisville, Kentucky and the other half was supposed to be shipped to a co-conspirator in Chicago, Illinois. Shortly after the marijuana shipment left Texas, it was discovered by police in Marion, Illinois when the driver of the tractor trailer carrying the drugs stopped at a truck weigh station.

Fernandez was arraigned on July 1, 1997 and entered a plea of not guilty. One month later, on August 1, 1997, Fernandez pleaded guilty to the conspiracy at a change of plea hearing. Fernandez promptly told his lawyer that he was willing to plead guilty, but there was no plea agreement arrived at between the government and him. Because Fernandez' native language is Spanish and he understands very little English, an interpreter was present at the hearing to translate the proceedings into Spanish for Fernandez and to relay his responses to the court in English.

During the change of plea hearing, Fernandez' court-appointed lawyer, John Stobbs ("Stobbs"), took the position that Fernandez would be subject to a prison sentence between 70 and 108 months under the Guidelines. In contrast to Stobbs' sentencing calculation, the Assistant United States Attorney estimated Fernandez' potential jail time between 210 and 262 months. According to the government, Fernandez faced this substantially harsher penalty because, although the indictment only alleged a marijuana shipment of 453 kilograms, the entire conspiracy actually involved 3,000 kilograms of marijuana. Adding this relevant conduct to Fernandez' base offense level, and tacking on an upward adjustment for being a leader or organizer in the conspiracy, the government concluded that Fernandez faced at least 210 months in prison under the Guidelines. The district court told Fernandez that it would not resolve the dispute over his sentence at the change of plea hearing, but said that the disagreement would be settled at his sentencing hearing. After listening to a factual basis for the plea, the district court accepted Fernandez' guilty plea and found him guilty as charged in the one-count indictment.

Not long after the change of plea hearing, Stobbs moved to withdraw as Fernandez' attorney. As a basis for the motion, Stobbs cited a previously undisclosed conflict of interest; it turned out that Stobbs also represented an alleged co-conspirator named in the same indictment charging Fernandez. The district court relieved Stobbs from the appointment and named attorney David Williams ("Williams") to serve as Fernandez' new lawyer. Shortly after the court appointed Williams, Fernandez filed a motion to withdraw his guilty plea on the grounds that he

did not understand the full extent of the charges against him or the penalties that could be imposed.

   The district court held a hearing on Fernandez' motion to withdraw his guilty plea. When asked at that hearing whether he had understood everything Stobbs had told him, Fernandez testified, "Not everything. I thought I was pleading guilty partially." In response to the question of whether he understood Stobbs' statements at the change of plea hearing regarding the offense levels set forth by the Guidelines, Fernandez said, "I didn't really understand exactly what those levels meant." Later, when communications between the court and Fernandez broke down because of the language barrier, the court interpreter interrupted by stating:

Your honor, I am quite confused here. He's talking about that he was feeling guilty or he understood that these 3,000 [kilograms] related to the case that had to do with the trailer, and he didn't think that there was anything else that was going to be brought as a charge. And that is what he didn't understand exactly, that the amounts that he was going to be charged for were an overall count.

In response to the interpreter's interjection, the district judge told Fernandez that he would have the opportunity to contest his liability for the 3,000 kilograms of marijuana at his sentencing hearing. Based on that representation, Fernandez withdrew his motion and agreed to allow his guilty plea to stand.

   At the sentencing hearing, the district court attributed to Fernandez a quantity of marijuana "in excess of 1,759 kilograms, but less than 3,000 kilograms." The court also found that Fernandez was an organizer or leader in the conspiracy. Based on these findings, Fernandez earned a Guidelines offense level of 36. Fernandez' criminal history category under the Guidelines was I, which meant that his range of incarceration was 188 to 235 months. Judge Beatty opted for the high-end of the range and sentenced Fernandez to 235 months in prison. The district court also sentenced Fernandez to five years of supervised release, a $2,000 fine, and a $50 special assessment. Fernandez then filed a timely notice of appeal.

   On appeal, Fernandez challenges the manner in which the district court conducted his change of plea hearing. According to Fernandez, the district court failed to adequately apprise him of the nature of the charge against him. Fernandez also contends that the district court

failed to advise him of the applicable mandatory minimum prison sentence./2 Fernandez insists that these errors violate Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11") and require that his guilty plea and resulting sentence be vacated.

## II.  Analysis

By pleading guilty to a criminal charge, a defendant waives several fundamental constitutional guarantees. Because a defendant sacrifices these critical rights, both due process and Rule 11 require that a defendant's guilty plea be made voluntarily and knowingly. United States v. Elkins, 176 F.3d 1016, 1021 (7th Cir. 1999). Rule 11 is meant to ensure that a defendant's guilty plea is "a voluntary and intelligent choice among the alternative courses of action open to him." United States v. Saenz, 969 F.2d 294, 296 (7th Cir. 1992). On appeal, we consider whether, when looking at the totality of circumstances surrounding the plea, the district court informed the defendant of his rights. United States v. Richardson, 121 F.3d 1051, 1057 (7th Cir. 1997); United States v. Wagner, 996 F.2d 906, 912 (7th Cir. 1993).

The applicable portions of Rule 11 provide that:

(c) Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
(1)  the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and . . . .

Fed. R. Crim. P. 11(c)(1). Rule 11, however, creates a harmless error exception by declaring that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed. R. Crim. P. 11(h). "The harmlessness inquiry naturally should focus on 'whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.'" United States v. Padilla, 23 F.3d 1220, 1221 (7th Cir. 1994) (quoting United

States v. Johnson, 1 F.3d 296, 302 (5th Cir. 1993) (en banc)).


A.  Nature of the Charge

Rule 11 states that "before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the nature of the charge to which the plea is offered." Fed. R. Crim. P. 11(c)(1). Although Rule 11's language demands that the trial judge personally inform the defendant of the nature of the charge to which he is pleading guilty, this court does not require "literal compliance" with the Rule. See United States v. LeDonne, 21 F.3d 1418, 1423-24 (7th Cir. 1994); United States v. Musa, 946 F.2d 1297, 1302 (7th Cir. 1991). Instead, when determining whether a defendant understands the nature of the crime to which he is admitting guilt, we have approved practices in which prosecutors identify the elements of the charged offense followed with an inquiry by the court confirming the defendant's understanding of the crime. See LeDonne, 21 F.3d at 1424. Similarly, we have recognized the validity of having prosecutors recount the specific facts which satisfy the elements of the charged offense followed by an admission of those facts by the defendant under questioning by the trial judge. Id.

Unless the defendant fully comprehends the elements of the crime to which he is confessing, "his plea cannot be said to have been knowingly and voluntarily entered." LeDonne, 21 F.3d at 1423 (citing Musa, 946 F.2d at 1303). To determine whether the defendant fully understands the nature of the charge to which he is admitting guilt, we have adopted a totality of the circumstances approach. Under this test, we consider (1) the complexity of the charge; (2) the defendant's level of intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the judge's inquiry during the plea hearing and the defendant's statements; and (5) the evidence proffered by the government. LeDonne, 21 F.3d at 1423; Musa, 946 F.2d at 1304.

In this case, the district court engaged in the following colloquy to verify whether Fernandez understood the nature of the drug conspiracy charge to which he was pleading guilty:

THE COURT:  Okay. Now you are here in court with your lawyer and I want to talk now about some of the rights that you have and a little bit about

what this case is about. Have you read the indictment in this case?
THE INTERPRETER:  Yes, I have.
THE COURT:  Did you read it yourself, or did you have someone read it to you?
THE INTERPRETER:  My attorney read it to me.
THE COURT:  And your attorney speaks Spanish does he?
THE INTERPRETER:  Yes.
THE COURT:  Did you understand what he said to you when he read it to you?
THE INTERPRETER:  Yes.
THE COURT:  And did you--did he answer any questions that you had about the indictment?
THE INTERPRETER:  Yes.
THE COURT:  So do you understand then what you are charged with here in the court today?
THE INTERPRETER:  Yes, sir.
THE COURT:  Are there any questions at all about anything in this indictment you have?
THE INTERPRETER:  No.

While this discussion is somewhat helpful in evaluating whether Fernandez understood the conspiracy charge, it does not end our inquiry. We have repeatedly held that simply asking a defendant if he has read and discussed the indictment with his attorney is insufficient to determine if he truly understands the nature of the charge against him. See LeDonne, 21 F.3d at 1424; United States v. Ray, 828 F.2d 399, 410 (7th Cir. 1987); United States v. Darling, 766 F.2d 1095, 1098 (7th Cir. 1985).

   Perhaps recognizing that questioning Fernandez about whether he read and understood the indictment was not enough, the district court also asked the AUSA to provide a factual basis for the plea, which she did. During that factual proffer, the AUSA described the specific acts committed by several individuals to transport the 453 kilograms of marijuana from southern Texas to its intended destinations in Kentucky and Illinois. The AUSA described the planned distribution of the contraband and named the individuals who worked for Fernandez. Finally, the prosecutor gave the factual basis for the government's contention that Fernandez was a leader of the conspiracy and its assertion that Fernandez should be held accountable for amounts of marijuana in excess of that charged in the indictment.

   At the conclusion of the government's factual proffer, the district court and Fernandez had the following exchange:

THE COURT:  Well, now, with the exception of the last part about the relevant offense conduct being 3,000 kilograms, and the bit about you're

[sic] being a leader or manager, the other statement that she made about that you did in connection with the drug transaction and your part in the drug transaction, factually, did you, in fact, do the things that she says you did?
THE INTERPRETER:  Not all of the acts, partially.
THE COURT:  What acts didn't you do?
THE INTERPRETER:  Yes, your Honor, I did.
THE COURT:  He did those things?
THE INTERPRETER:  Yes.
THE COURT:  Okay. That's what you're pleading guilty to. Do you understand that?
THE INTERPRETER:  Yes, your Honor.

Following this colloquy, the court accepted the guilty plea and adjudged Fernandez guilty of the offense charged in the indictment.

Although this is a close case, we cannot conclude that Fernandez was fully aware of the nature of the crime to which he pleaded guilty. Applying the five factors identified in LeDonne, 21 F.3d at 1423, it is not at all clear from this record that Fernandez' guilty plea was knowing and voluntary. Rather, under our totality of the circumstances approach, we find this guilty plea enveloped in confusion and misunderstanding. Additionally, it appears from the record that the district court fell short of fulfilling its obligations under Rule 11.

The charge against Fernandez was conspiracy to distribute marijuana. While a drug conspiracy charge may seem simple or commonplace to well-educated prosecutors, defense attorneys, and judges who deal with them on a daily basis, "the charge of 'conspiracy' is not a self-explanatory legal term or so simple in meaning that it can be expected or assumed that a lay person understands it." United States v. Wetterlin, 583 F.2d 346, 350 (7th Cir. 1978). Fernandez is a native of Mexico, has only a fifth grade education, and understands very little English. Aside from one charge for driving under the influence of alcohol, Fernandez had never before been charged with a crime. These facts strongly suggest that, like most lay people, Fernandez would not understand the term "conspiracy" without some further explanation. Based on the complexity of the charge and Fernandez' lack of education or familiarity with the criminal justice system, the first two factors articulated in LeDonne favor a finding that Fernandez did not fully understand the nature of the conspiracy charge to which he was admitting guilt. See United States v. Longoria, 113 F.3d 975, 977 (9th Cir. 1997) (guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts") (citations omitted).

Turning to the third factor, although Fernandez was represented by attorney Stobbs at his change of plea hearing, Stobbs provided representation that left much to be desired. Mainly, Stobbs had a very serious conflict of interest that he failed to disclose to Fernandez. Notwithstanding his knowledge of this conflict, Stobbs represented Fernandez from indictment to guilty plea and may well have given Fernandez advice that convinced him to plead guilty. Although the record does not disclose whether Fernandez' guilty plea benefitted Stobbs' other client, any conflict of interest during the vital period in which a defendant is deciding whether to plead guilty is a serious transgression. The upshot of these facts is that while Fernandez did have counsel to advise him, we cannot say with any degree of certainty that his counsel's assistance was more helpful than harmful.

The fourth factor, the depth and clarity of the discussion between the trial judge and the defendant concerning the nature of the charge, illustrates that Fernandez experienced substantial confusion over the crime to which he was admitting guilt. For example, when the district court asked Fernandez if he had done the things set forth in the AUSA's factual proffer, Fernandez responded, "Not all of the acts, partially." When asked which acts he didn't commit, Fernandez changed his answer and replied, "Yes, your Honor, I did." In response to this new and drastically different answer, the district judge bypassed Fernandez altogether and questioned the interpreter directly by asking, "He did those things?" To which the interpreter answered "yes." The confusion over precisely what acts Fernandez admitted continued at the hearing on his motion to withdraw the guilty plea. During that hearing, the trial court asked Fernandez if he had understood everything that Stobbs had told him at the change of plea hearing and Fernandez responded, "Not everything. I thought I was pleading guilty partially."

In short, Fernandez' accounts of what acts he admitted and those he denied were very murky. Based on this record, it is impossible to ascertain precisely what acts Fernandez admits and which he denies. Fernandez twice told the district court that he was only "partially" guilty. However, without further investigatory questions to flush out the details of Fernandez' participation in the conspiracy, the district court accepted the guilty plea. Because we cannot glean a clear understanding of Fernandez' participation in the crime charged, it is impossible to determine whether Fernandez himself understood the nature of the crime to which he

was pleading guilty.

The final factor in our totality of the circumstances approach requires us to analyze the government's proffered evidence. We find the government's factual proffer detailed and, normally, it would probably be sufficient to secure Fernandez' guilty plea. The facts show, however, that this was anything but an ordinary change of plea hearing. Fernandez' attorney had a serious conflict of interest; there was no written and signed plea agreement with the government; and the language barrier between Fernandez and the district judge caused substantial confusion during the hearing--so much confusion that the district court resorted to questioning the interpreter rather than Fernandez. Neither the district court nor the AUSA ever explained the nature of the crime of conspiracy to Fernandez. Additionally, Fernandez changed his responses to whether he had, in fact, committed the acts that the AUSA related in the factual proffer. And, no one bothered to clarify the ambiguity with detailed follow-up questions to determine whether Fernandez understood that he had committed acts that rendered him guilty of conspiracy to distribute marijuana. While there was nothing wrong with the AUSA's factual proffer on its face, the surrounding chaos at this change of plea hearing significantly negated any confidence in Fernandez' understanding of and admission to those facts.

Because a defendant's clear understanding of the nature of the charge to which he is pleading guilty relates to the very heart of the protections afforded by the Constitution and Rule 11, we cannot conclude that the error in this case was harmless. Instead, our review of this record leads us to believe that allowing Fernandez' guilty plea in this case to stand would deprive him of substantial constitutional rights.


B.  Mandatory Minimum Sentence

Fernandez also complains that the district court failed to adequately inform him of the applicable mandatory minimum sentence. The government's initial response to this argument is that Fernandez has waived the issue. We find the government's position unpersuasive. In his motion to withdraw the guilty plea, Fernandez stated that he did not understand "the penalties which could be assessed." This statement adequately preserved his argument that the district court never advised him of the mandatory minimum sentence which a guilty plea would trigger. Even if Fernandez had not properly preserved the

issue, he could not have waived it. This court has previously treated Rule 11 objections with "extra solicitude" and held that "a claim of non-compliance with Rule 11(d) will not be deemed waived if a party fails to present it in the district court." United States v. Cross, 57 F.3d 588, 590 (7th Cir. 1995) (citing United States v. Ruiz-del Valle, 8 F.3d 98, 102 (1st Cir. 1993); United States v. Young, 927 F.2d 1060, 1061 (8th Cir. 1991); United States v. Coronado, 554 F.2d 166, 170 n.5 (5th Cir. 1977)). Although Cross addressed the protections afforded by Rule 11(d) rather than Rule 11(c), we can conceive of no principled reason to treat the important rights afforded by these subsections any differently.

Since we find that Fernandez preserved the matter for appellate review, we consider the merits of his argument that the district court failed to advise him of the applicable mandatory minimum. This court explained the law governing this issue in United States v. Padilla, 23 F.3d 1220, 1222 (7th Cir. 1994):

Failure to inform a defendant about applicable mandatory minimums can be, but is not necessarily, a serious oversight. The inquiry is fact bound. If, for instance, the record discloses that a defendant was aware when pleading guilty that the sentencing guidelines would subject him to a sentence well in excess of any statutory mandatory minimum likely applicable to his case, the failure to advise him of such minimums during the plea hearing cannot reasonably be said to have affected his decision to accept the plea. On the other hand, where it is not clear that a defendant was aware of the sentencing guideline range into which his relevant conduct would likely fall, the failure to inform him of the probable applicability of statutorily mandated minimums may well have impaired his ability to understand his situation fully. The relevant inquiry must center upon what the defendant actually knows when he pleads guilty--and without an affirmative indication in the record we cannot assume that he knows anything about the sentence restrictions he faces--, what information would have been added (or what corrections made) to his pool of knowledge by compliance with Rule 11 demands, and how the additional or corrected information would have likely affected his decision making.

Padilla, 23 F.3d at 1222 (citations omitted). The court went on to explain that problems often develop in cases such as this one, where a defendant's sentence will depend on a calculation of drug quantity that is not determined until after the plea process is completed. Id. at 1223. Therefore, "any information the district court

could present the defendant about potential minimum and maximum penalties is typically somewhat speculative. This, however, cannot relieve the court of its responsibility to make a defendant aware of his likely exposure." Id. at 1224.

Like the other colloquy at his change of plea hearing, the conversation concerning Fernandez' potential sentence was consumed by confusion. When asked by the district court for an initial sentencing calculation under the Guidelines, Stobbs estimated Fernandez' potential prison time somewhere between 70 and 108 months. In stark contrast, the government projected that under the Guidelines Fernandez would have to serve between 210 and 262 months. After hearing the respective positions about Fernandez' sentence under the Guidelines, the district court engaged Fernandez in the following colloquy regarding his potential sentence:

THE COURT:  What's the maximum; not under the Guidelines but statutory?
[AUSA]:  Statutory maximum is life. This carries a ten-year to life.
THE COURT:  All right. So Mr. Fernandez there has been no agreement between your lawyer and the Government's lawyer. So if you're gonna plead guilty you should plead guilty understanding that you could be, you could be, sentenced up to life in the federal penitentiary. Do you understand that?
THE INTERPRETER:  Yes.
THE COURT:  You can also take into consideration that the Government's position is that you would be--under the Guideline Act would be sentenced to a sentence of between 210 to 262 months. Do you understand that?
THE INTERPRETER:  Yes.
THE COURT:  Now you're [sic] lawyer is going to argue that it should be something less than that. And he will make arguments and put on evidence to support that. [The AUSA] representing the Government will be arguing that it should be 262 months; which is twenty-some-odd years. Do you understand that?
THE INTERPRETER:  Yes.
THE COURT:  And you want to plead guilty under those circumstances?

After this question, Stobbs interrupted the court and stated Fernandez' desire to talk to the government and make a factual proffer in an effort to receive a reduced sentence. In response to this interruption, the AUSA expressed a willingness to listen to what Fernandez had to say, but declined to promise him a lesser prison sentence. The district court then resumed advising Fernandez of his potential jail time by

stating:

THE COURT: Mr. Fernandez, I want to make it very clear to you. If you plead guilty here today I'm going to have a Presentence Report prepared. Someone will check into your background and go into all the facts of the case and your family and your employment and all those things. And I'll have that and you'll get a copy of it; you'll see it. And then when you come back up here in two or three months to be sentenced, I'll listen to whatever argument the Government wants to make and whatever argument you want to make and whatever evidence anybody wants to put on. And when I've done all that you may very well get 262 months in the penitentiary. I want to be sure--this isn't just stuff I'm saying. If you're going to plead guilty you got [sic] to understand that you may--and do it on the assumption that you will get 262 months. I don't want you pleading guilty--I mean, I don't want you doing this thinking you're going to get the low end of the deal. You may get the worst end of the deal. And if you don't want to do it that way then don't plead guilty. Plead not guilty and go to trial.

And your lawyer isn't going to serve this time. At 262 months or the 160, whatever it is, regardless of what it is, Mr. Stobbs will not serve that time. You will. So it's a decision that you have to make. You can consider his advice and you should. You should listen to him and consider his advice; but, in the final analysis it's your decision to make and you will serve the time. So, you still want to plead guilty?
THE INTERPRETER: Yes.

   While the district court was careful to advise Fernandez of his potential statutory maximum and his high-end sentence under the Guidelines, there was no mention of a mandatory minimum sentence. Rather, as is readily apparent from the foregoing colloquy, the district judge never informed Fernandez that by pleading guilty he would trigger a mandatory minimum prison sentence./3 Under the applicable statutes, if the district court held Fernandez accountable for the 453 kilograms of marijuana charged in the indictment, then his mandatory minimum sentence would have been 5 years. See 21 U.S.C. sec. 841(b)(1)(B)(vii) ("In the case of a violation . . . involving 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years . . ."). On the other hand, if Fernandez were ultimately found responsible for the alleged relevant conduct--up to 3,000 kilograms of

marijuana, according to the government--then his statutory minimum would have increased to 10 years. See 21 U.S.C. sec. 841(b)(1)(A)(vii) ("In the case of a violation . . . involving 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years . . ."). Regardless of which statute was eventually triggered by the district court's findings at the sentencing hearing, it appears that neither the trial court nor Fernandez' attorney ever informed him of their mandatory application.

This case fits squarely into the situation contemplated in Padilla. There is nothing to suggest that Fernandez was ever alerted to the mandatory minimum sentences applicable in his case. Additionally, the drug quantity attributable to Fernandez was disputed and not known at the time of the guilty plea. And, Fernandez' attorney represented to Fernandez and to the court that Fernandez' Guideline range of incarceration could be as low as 70 to 108 months. Thus, under these circumstances, it was "not clear that [Fernandez] was aware of the sentencing guideline range into which his relevant conduct would likely fall, [and] the failure to inform him of the probable applicability of statutorily mandated minimums may well have impaired his ability to understand his situation fully." Padilla, 23 F.3d at 1222.

The error in this case cannot be brushed aside as harmless. As the court noted in Padilla, the "relevant inquiry must center upon what the defendant actually knows when he pleads guilty." Id. Here, Fernandez knew only that his sentence was disputed and that it would ultimately fall somewhere between 70 months and 262 months. Aside from this, all Fernandez knew was that he would have the opportunity to present evidence and make his arguments concerning his sentence at the sentencing hearing. Because the disparity between what Fernandez knew to be the lowest sentence he could receive (70 months) and the undisclosed ten-year mandatory minimum sentence (120 months) is so great, Fernandez' decision to plead guilty could not have been fully informed of the penalties he faced. As the court put it in Padilla, "we think it patent that the failure to inform a defendant of a mandatory five-year or ten-year minimum sentence cannot be deemed inconsequential to the decision to plead when no firm indication exists of the defendant's specific awareness at time of plea that a sentence of such an order is likely." Padilla, 23 F.3d at 1223.

III.  Conclusion

  For the foregoing reasons, we vacate Fernandez'
conviction and sentence and remand this case to
the district court so Fernandez may enter a new
plea.


/1 The indictment alleges that the shipment of
marijuana was "approximately 1,000 pounds." One
thousand pounds equals about 453 kilograms in the
metric system of weight measurement. Since the
United States Sentencing Guidelines refer to drug
weight quantities in terms of the metric system,
we will use the metric weights rather than the
English weight system employed in the indictment.

/2 Fernandez also argues that the trial court did
not properly inform him of his right to a jury
trial because the district court never used the
term "jury" when advising him of his rights.
Because we find that the district court failed to
properly inform Fernandez of the nature of the
charge to which he pled guilty and the applicable
mandatory minimum sentences, we do not reach this
argument.

/3 The government argues that Fernandez was advised
on the ten-year mandatory minimum that applied in
his case because, in response to a question about
the maximum possible sentence from the court, the
AUSA said, "Statutory maximum is life. This
carries a ten-year to life." We find this
argument unpersuasive. First, this statement was
nothing more than a passing comment made by a
prosecutor. Second, the prosecutor directed the
statement to the judge, not to Fernandez. And,
third, the remark was given in response to a
question about the statutory maximum, not the
statutory minimum. Under these circumstances, it
would be manifestly unfair to attribute knowledge
of the ten-year mandatory minimum to Fernandez.