In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1221

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SIAMAK S. FARD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:09-cr-00247-1 — **John F. Grady**, *Judge.*

ARGUED DECEMBER 2, 2014 — DECIDED JANUARY 7, 2015

Before WOOD, *Chief Judge*, and WILLIAMS and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Siamak S. Fard pled guilty to one count of wire fraud pursuant to a blind plea. He later sought to withdraw his plea, alleging that it was not knowingly and voluntarily entered. The district judge conducted an evidentiary hearing to determine whether Fard's plea was based

upon a representation by Fard's original defense counsel that the government had promised to dismiss the indictment if Fard pled guilty and cooperated. At the hearing, counsel denied having made such a statement. Rejecting Fard's testimony, the district judge credited counsel's testimony and denied Fard's motion to withdraw his guilty plea. At sentencing, the judge increased Fard's guideline sentence, finding that he had obstructed justice by lying at the evidentiary hearing. He also denied Fard's motion for an acceptance of responsibility reduction, because Fard falsely denied his leadership role in the scheme. Now, Fard seeks to withdraw his guilty plea and challenges certain aspects of his sentence. We find that Fard's guilty plea was not knowing and voluntary, vacate his plea, and remand the case. Because we vacate Fard's plea, we will not address the arguments regarding his sentence.

## I. BACKGROUND

On March 17, 2009, a federal grand jury in the Northern District of Illinois returned a three-count indictment charging Fard and two co-defendants with wire fraud in violation of 18 U.S.C. § 1343. Fard entered a plea of not guilty, and the government filed a superseding indictment on May 19, 2009, charging two additional co-defendants and three additional counts of wire fraud. In total, Fard was charged in four of the counts and again entered a plea of not guilty. A second superseding indictment was filed on May 25, 2010, after the district court granted a co-defendant's motion to dismiss for vagueness, but the new counts did not pertain to Fard.

The indictments were based upon an alleged mortgage fraud scheme where the defendants obtained money and property from mortgage lenders by means of false represen-

tations. Fard and his co-defendants allegedly obtained nearly thirty loans in the names of nominees by submitting false and fraudulent documents to the lenders. The nominees would not have qualified for the loans if their applications had been truthful. They usually did not live in the houses which were purchased in their names and funds acquired by the defendants were at times used to pay for improvements on different properties from the ones for which they were disbursed.

Over the course of two and a half years, the trial date was continued several times. In April 2011, Fard's original counsel filed a motion requesting that the district court appoint him to continue representing Fard under the Criminal Justice Act, 18 U.S.C. § 3006A, since Fard could no longer afford to pay him. The district court denied the motion, but we could find no record of why the motion was denied.

Trial was eventually set for October 18, 2011, but on October 17, defense counsel asked the court to continue the trial for sixty days, because both the defense and the government thought that Fard could provide significant cooperation and were hoping to reach an agreement. The judge refused to continue the trial beyond November 7, his next available date. After giving counsel that date, the judge called for a recess to allow the government, defense counsel, and Fard to confer.

After the break, defense counsel stated, "We are going to change our plea to Count 3 with no agreement with the government at this time. We are entering, I guess we would call it a blind plea to Count 3 of the indictment, Judge." The judge proceeded to read portions of the second superseding

indictment and primary allegations. Then the following exchange occurred:

Court: Do you follow me so far?

Fard: Yes, I do.

Court: And so far do you agree that you did all this?

Defense Counsel: Judge, he agrees that he participated in the scheme and he had knowledge of the scheme.

The judge pressed Fard about the extent of his "knowledge" by questioning defense counsel, to which counsel responded, "[Fard] had knowledge of Nationwide submitting these, permitting and submitting these phony applications, and he knew it was going on, but he did nothing about it, he just participated in the scheme as it went along." Nationwide was the lender Fard allegedly defrauded.

The judge then read from a draft, but unexecuted, plea agreement, which spelled out the way in which the defendants obtained mortgage loans in the names of nominees and used the money for other projects. Whenever Fard spoke, he resisted the allegations, at one point saying, "I mean, I did not plan any scheme. We just tried to build typical American dream to build and fix and sell and, you know, bring the dream true, and just got involved with the wrong people." Defense counsel repeatedly said that Fard "participated" and "had knowledge," but that Fard did not want the court to think he was the planner. Another break was held after Fard stated that the lender, Nationwide, put together the loan applications and knew about the misrepresentations.

The elements of wire fraud were never explicitly stated at the plea hearing. Fard insisted throughout the hearing—relevant portions of which we will quote in our later discussion—that his intentions were honest and businesslike. Despite finding that it was "like pulling teeth" to get Fard to admit guilt, the district judge accepted Fard's plea.

After entering his guilty plea, Fard met with the government without his attorney to discuss cooperation. At the meeting, government agents asked Fard to talk about his involvement in the wire fraud scheme. Fard became agitated, arguing that he did not do anything wrong. The meeting ended without Fard providing any cooperation and he did not meet with the government again. Instead he asked his attorney to file a motion withdrawing his guilty plea.

On November 10, 2011, Fard's original counsel filed a motion to withdraw as counsel and to withdraw Fard's guilty plea. The lawyer's motion to withdraw as counsel was granted and new counsel was appointed.

New counsel filed a more detailed motion to withdraw Fard's plea, arguing that it was not knowingly and voluntarily entered because Fard did not understand the nature of the charge. The motion also alleged that Fard only entered into the guilty plea because his original counsel told him that the cooperation agreement with the government was conditional on his willingness to enter a guilty plea that day and that if he pled guilty, the government would provide Fard a meaningful opportunity to provide anticipated cooperation by working undercover. In an attached affidavit, Fard stated that his original counsel had told him on the morning of his change of plea hearing that the plea was just a formality and the case would be dismissed after he cooperated with the

government. The district judge decided that an evidentiary hearing was needed to determine the nature of the alleged conversations between Fard and original counsel on the day of the change of plea hearing.

On June 5, 2012, the evidentiary hearing was held. Original counsel, Fard, and the case agent testified. Counsel denied telling Fard on the day of the plea hearing that the government promised to dismiss the case if he pled guilty and cooperated, but he did admit to jokingly telling Fard that the indictment might be dismissed if Fard became a spy in Iran. At the conclusion of the hearing, the district judge made a credibility determination that counsel was telling the truth and Fard was not. The judge denied Fard's motion to withdraw his plea and set a date for sentencing.

Sentencing was continued many times, during which Fard retained a third lawyer. He filed a third motion to withdraw Fard's guilty plea, which raised similar issues as the previous motions, along with an ineffective assistance of counsel claim. The motion was denied. On January 22, 2014, Fard's sentencing hearing was held. His pre-sentence report calculated an offense level of 29. But the district judge found Fard's offense level to be 31 because he included a two-level increase for obstruction of justice, based upon his finding that Fard lied during the evidentiary hearing. Fard was also denied an acceptance of responsibility reduction. With a criminal history category of I, Fard's Guideline range was 108–135 months. The judge ultimately sentenced Fard to 84 months in prison.

On appeal, Fard once again seeks to withdraw his guilty plea as unknowingly and involuntarily entered. He also challenges the district judge's sentencing decisions regarding

the obstruction of justice enhancement and the denial of an acceptance of responsibility reduction.

## II. ANALYSIS

Fard argues that his guilty plea was not knowing and voluntary. He asserts that his plea fell short of the requirements of Federal Rule of Criminal Procedure 11 in two respects. First, his plea colloquy did not comply with Rule 11 because he never understood the nature of the charge against him, and second, the district judge did not ensure that the plea was not based upon any undisclosed promises. With respect to the first claim, Fard asserts that the district judge failed to make sure that Fard understood the nature of wire fraud and particularly that a wire fraud conviction required a specific intent to defraud.

We review the district court's denial of a defendant's motion to withdraw a guilty plea for abuse of discretion. *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008). After a guilty plea is accepted, a defendant may withdraw it if he presents a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). In reviewing the decision of the district court, factual findings as to whether the defendant has presented a "fair and just reason" are reviewed for clear error. *Chavers*, 515 F.3d at 724.

"By pleading guilty to a criminal charge, a defendant waives several fundamental constitutional guarantees. Because a defendant sacrifices these critical rights, both due process and Rule 11 require that a defendant's guilty plea be made voluntarily and knowingly." *United States v. Fernandez*, 205 F.3d 1020, 1024 (7th Cir. 2000). Rule 11 sets up many requirements that are intended to assure that a defendant's

guilty plea is knowing and voluntary. One requirement is that "before the court accepts a plea of guilty or nolo contendere … the court must address the defendant personally in open court … [and] the court must inform the defendant of, and determine that the defendant understands, the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). "Unless the defendant fully comprehends the elements of the crime to which he is confessing, his plea cannot be said to have been knowingly and voluntarily entered." *Fernandez*, 205 F.3d at 1025 (quotation and citation omitted). A defendant does not have an absolute right to withdraw a plea before sentencing, but the court may allow him to do so if he has a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B); *Chavers*, 515 F.3d at 724. "A guilty plea taken without attention being given to the matters set forth in Rule 11 could constitute a 'fair and just' reason justifying the request for withdrawal of a plea, and the denial of a motion to withdraw under such a circumstance would be an abuse of discretion." *United States v. Le-Donne*, 21 F.3d 1418, 1423 (7th Cir. 1994).

To determine whether the defendant fully understands the nature of the charge to which he is admitting guilt, we have adopted a totality of the circumstances approach. *United States v. Pineda-Buenaventura*, 622 F.3d 761, 770 (7th Cir. 2010). Under this approach, we consider "(1) the complexity of the charge; (2) the defendant's level of intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the district judge's inquiry during the plea hearing and the defendant's own statements; and (5) the evidence proffered by the government." *Id.* (citing *Fernandez*, 205 F.3d at 1025).

Reviewing the record here in light of the relevant factors, we cannot conclude that Fard was fully aware of the nature of the crime to which he pled guilty. The guilty plea was "enveloped in confusion and misunderstanding," *Fernandez*, 205 F.3d at 1026, such that we cannot say with confidence that Fard truly understood that a wire fraud conviction required intent to defraud.

The first factor, complexity of the charge, "mitigate[s] against a finding that [Fard] understood exactly what he was pleading to." *Pineda-Buenaventura*, 622 F.3d at 771. Fard pled guilty to one count of wire fraud. A wire fraud conviction under 18 U.S.C. § 1343 requires (1) a scheme to defraud; (2) intent to defraud; and (3) use of wires in furtherance of the scheme. *United States v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006). It is a specific intent crime. *Id.* To show the intent to defraud, we have said that we require a "willful act by the defendant with the specific intent to deceive or cheat, usually for the purposes of getting financial gain for one's self or causing financial loss to another." *Id.* (quotation and citation omitted).

To a lay person, fraud may seem like theft. Laypeople, including defendants, often think fraudulent intent requires intent to take something from another person and not return it, for one's own benefit. *See In re Katsman*, 771 F.3d 1048 (7th Cir. 2014) (noting defendant argued that she lacked fraudulent intent because she did not seek to obtain any monetary benefit). But fraud does not require that a defendant "contemplate[] harm to the victim or any loss." *Leahy*, 464 F.3d at 787. In fact, "a defendant's honest belief that his actions will ultimately result in a profit and not a loss is [legally] irrelevant." *Id.* As the government stated at oral argument, a per-

son can commit fraud even when he intends to repay the money obtained by the fraud. We believe that the illegal nature of many fraudulent schemes, like many conspiracies, will not be "immediately understandable to a layperson." *Pineda-Buenaventura*, 622 F.3d at 771. Fraudulent intent and a fraudulent scheme are not terms with a simple and common meaning. *Cf. United States v. Wetterlin*, 583 F.2d 346, 350 (7th Cir. 1978) (conspiracy "is not a self-explanatory legal term or so simple in meaning that it can be expected or assumed that a lay person understands it").

With respect to Fard's intelligence, age, and education, Fard was an experienced businessman in the construction industry. However, English was not his native language and he is not a lawyer. He should be no more expected to understand the meaning of "fraudulent intent" or a "fraudulent scheme" than an average juryperson.

The fact that Fard was represented by counsel "d[oes] not alleviate the problems we perceive here," *Pineda-Buenaventura*, 622 F.3d at 771, particularly in light of Fard's second challenge to his plea, namely that his lawyer told him that the government promised to dismiss his case if he pled guilty. Fard and his original counsel clearly had a difficult relationship and we cannot be assured that counsel explained the legal meaning of fraudulent intent to his client. In fact, counsel's own statements at the plea hearing suggest that counsel knew Fard did not think he acted with fraudulent intent. Counsel said "his intentions he still feels were honorable and businesslike" and "[t]he intentions of what to do with the money, and that's where he's confused, was good." By counsel's own words then, Fard was confused about the nature of the charges. At certain points, counsel

attempted to clarify matters for the court, but his clarification was couched in the words of "knowledge" and "participation", not intent to defraud, and, regardless, "those attempts are not a substitute for [Fard] himself actually indicating an understanding of the charge to which he was pleading." *Id.*

The fourth factor—the judge's inquiry and the defendant's own statements during the plea hearing—is where this plea runs into its biggest challenges. The court never explained what "intent to defraud" means or what a fraudulent scheme is, and Fard never admitted to acting with intent to defraud. A careful review of Fard's colloquy demonstrates that Fard was indeed confused about the concept of fraudulent intent and was equivocal in many of his answers to the court regarding his actions. For example, when the judge asked Fard if the government's proffer regarding how the scheme worked was accurate, Fard responded "partial true." *Cf. Fernandez*, 205 F.3d at 1027 (vacating defendant's guilty plea and using defendant's response "[n]ot all of the acts, partially" to the question of whether he had done the things set forth in the government's proffer as evidence that defendant was confused over the crime to which he was admitting guilt). The court continued:

> Court: So you were using these nominees to avoid the appearance that you were the applicant—
>
> Fard: No, no, no. It was a partnership. The attorney recommended if we have partners, it will share the expenses, it will share the labor, and it will be also easier to obtain financing if you have multiple partners.

Fard was unequivocal, both in his own statements and in counsel's statements on his behalf, in professing his good intentions. In his exchanges with the court, Fard firmly resisted admitting any intent to defraud. That is because, as counsel stated, "it was more the lenders here that were letting this stuff go for people who just wanted to run a business." The lenders were aware of and involved in setting up the scheme. For example:

> Court: Now, did you participate in that scheme to defraud the lenders by submitting to them and causing them to rely upon these false loan applications which were false in the respects which are recited in the draft that I read?

> Fard: Your Honor, the lender was Nationwide Mortgage Financial, which they put the whole thing together. But I had acknowledgment, but I did not say anything against the lender. Lender is the one introduce these people to me to bring them as a partner. Lender was Nationwide Financial Mortgage, which they brought these people.

It was at this point that the judge called for a break, recognizing that he was going to have to conclude that he did not have a plea. He told defense counsel that in order for the plea to be accepted, "you've got to get him to admit that he at least participated in this scheme knowing that it was a fraudulent scheme."[1] In *Pineda-Buenaventura*, we suggested that when a district judge faces a defendant resisting taking responsibility at a plea hearing, the judge might want to take

---

[1] Despite using the phrase "fraudulent scheme," the judge did not explain the meaning of a fraudulent scheme.

a brief recess in the plea colloquy in order for defense coun-
sel and the defendant to confer and address a defendant's
confusion. 622 F.3d at 772. At Fard's hearing, the judge took
such a break. But the confusion continued. After returning
from the break, Fard explained in his own words what he
was pleading to, in a statement which was, at best, "non-
committal, vague, and evasive," *id.*:

> Court: Mr. Fard, what do you plead guilty to?

> Fard: I participate and I had the acknowledgment of
> the partners probably their stuff was not kosher, the
> document was not kosher.

> Court: What do you mean probably?

> Fard: Like [defense counsel] said, the partner did not
> reside in the property.

> Court: You say "partner." Do you mean these nomi-
> nees?

> Fard: Yes, Your Honor.

> Court: You knew that they were not qualified for
> these loans, if they told the truth about themselves?

> Fard: Yes.

> Court: Not what they intended to do. Did you know
> that?

> Fard: Yes, Your Honor.

> Court: All right. Now, did you know that the mort-
> gage proceeds were going to be used by you and per-
> haps others to acquire and make improvements on
> properties other than this Oakley Avenue property?

Fard: The mortgage, we did lots of improvement on that subject property, and we might use some of the money for another property, but we spent a lot of money on that particular property.

And so it went on. The judge became so exasperated with Fard's unwillingness to admit fault that he said "It's like pulling teeth. I feel I ought to have a dental license this afternoon." Nonetheless the judge felt he had elicited enough information for a plea on the intent and scheme to defraud, without ever explaining fraudulent intent. We find that "[b]ased on this record, it is impossible to ascertain precisely what [intent] Fard admits." *Fernandez*, 205 F.3d at 1027.

The final consideration in our totality of the circumstances approach examines the government's proffered evidence. Examining this factor in *Fernandez*, we said that "[w]hile there was nothing wrong with the AUSA's factual proffer on its face, the surrounding chaos at this change of plea hearing significantly negated any confidence in Fernandez' understanding of and admission to those facts." *Id.*; *see also Pineda-Buenaventura*, 622 F.3d at 772. Similarly here, the government's explanation of its evidence would probably be sufficient to secure a normal guilty plea, but "this was anything but an ordinary change of plea hearing." *Fernandez*, 205 F.3d at 1027. Before the hearing, Fard's attorney had sought to be appointed under the CJA because Fard could not afford to pay him to go to trial, but the court, without any explanation in the order, rejected the request. If Fard did not plead guilty, trial was set to begin in a couple weeks. Neither the district court nor the government ever explained the nature of fraudulent intent on the record. Breaks were taken, but confusion continued. And throughout the hearing, the words

"knowledge" and "participation" were used, rather than "intent" or "fraudulent."

"A defendant's clear understanding of the nature of the charge to which he is pleading guilty relates to the very heart of the protections afforded by the Constitution and Rule 11." *United States v. Bradley*, 381 F.3d 641, 647 (7th Cir. 2004) (quoting *Fernandez*, 205 F.3d at 1027). So we cannot conclude that the error in this case was harmless. *Id.*

Fard also argues that his plea was not voluntary because it was based on undisclosed promises. *See* Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from any force, threats, or promises (other than promises in a plea agreement)."). Because we vacate Fard's plea on other grounds, we do not need to reach this argument. However, we note in passing that the district judge never asked Fard whether his plea was based upon any undisclosed promises. Fard's claim is that his original attorney told him that if he pled guilty, the government promised to dismiss the indictment. While the district judge credited the lawyer's statements at the evidentiary hearing that he never told Fard the case would be dismissed if he pled guilty, statements on the record at the plea hearing indicate that such negotiations may have been taking place. The plea hearing began with defense counsel asking for a continuance because "we've entered into some pretty serious negotiations with the government that involve extensive cooperation between my client … involving undercover operations …. And basically what we would like to see my client do is begin his cooperation." The government agreed that Fard could be in a posi-

tion to "give historical cooperation" and "some active going-forward type cooperation." Counsel then stated, "Judge, if I may, we were hoping that, depending how extensive this involvement is and the cooperation is, that maybe one hope is that we may b[e] able to avoid a plea altogether." After the judge refused the continuance and a break was given, counsel stated that Fard was entering a blind plea to Count 3. When the judge asked about the other counts in the indictment, the government responded that "[t]his is a blind plea with no promises in either direction." It was at this point that the judge could have asked Fard if he had been promised anything, but he did not. The government could have also stated that, while negotiations were ongoing, the government had made no promise to continue negotiating. And the government or the defense could have spoken up to alert the judge after the factual basis was established that Fard had not been asked about all the areas required by Rule 11. *See United States v. Polak*, 573 F.3d 428, 432–33 (7th Cir. 2009) (stating that it is the responsibility of the judge, prosecutor, and defense counsel to ensure that a plea meets the requirements of Rule 11 and that district judges may want to utilize a checklist to ensure that the requirements are satisfied at a plea colloquy). We do not need to make a determination as to whether Fard's plea was based upon undisclosed promises, but the record here suggests that Fard's claim is not far-fetched.

Because we vacate Fard's conviction, we do not address the challenges that Fard raises to his sentence.

### III. CONCLUSION

For the foregoing reasons, we VACATE Fard's conviction and REMAND this case for further proceedings consistent with this opinion.